No. 25-1385

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

LAUREL D. LIBBY; RONALD P. LEBEL; WENDY MUNSELL; JASON LEVESQUE; BERNICE FRASER; RENE FRASER; DONALD DUBUC,

Plaintiffs - Appellants,

v.

RYAN M. FECTEAU, in their official capacity as Speaker of the Maine House of Representatives, and ROBERT B. HUNT, in their official capacity as Clerk of the House,

Defendants-Appellees,

On Appeal from The United States District Court for the District of Maine

## APPELLEES' RESPONSE TO EMERGENCY MOTION FOR INJUNCTION PENDING APPEAL

AARON M. FREY
Attorney General

KIMBERLY L. PATWARDHAN
Assistant Attorney General

JONATHAN R. BOLTON
Assistant Attorney General

Office of the Maine Attorney General
6 State House Station
Augusta, Maine 04333-0006
207-626-8800
Attorneys for Defendants-Appellees

Appellants' motion for an injunction pending appeal asks this Court to insert itself into core legislative functions: the Maine House of Representatives' constitutionally enumerated powers to determine the process by which it will pass legislation, adopt rules, and punish its members for violating those rules. Because both the Maine Speaker of the House and Clerk of the House enjoy absolute legislative immunity from any suit challenging such legislative acts, and because, even if immunity did not apply, Appellants would be unlikely to succeed on the merits of their claims, the Court should deny the motion.

## BACKGROUND

On February 17, 2025, Maine Representative Laurel Libby made a public post to her official Representative Laurel Libby Facebook account that disclosed personal and medical information about a child in Maine. Fecteau Decl. (ECF No. 29) ¶12. The post identified a transgender high-school student by first name and school and included photographs of the student, while criticizing that student's participation in a girl's high school sporting event. *Id.*

Speaker Fecteau immediately requested that Rep. Libby take down the post, based on his concern that publicizing the student's identity would threaten the student's health and safety. *Id.* at ¶¶13-14, Ex. C. Rep. Libby refused. *Id.* ¶14.

On February 25, 2025, the House voted on a censure resolution of Rep. Libby for violating the Legislative Code of Ethics by jeopardizing the health and safety of

a child through her Facebook post. *Id.* ¶¶16-17, Ex. D. The resolution passed, 75-70. *Id.* ¶18. Rep. Libby declined to apologize for her misconduct, as required by the resolution, and the Speaker ruled her in violation of House Rule 401(11):

> **Breach of rules**. When any member is guilty of a breach of any of the rules and orders of the House and the House has determined that the member has violated a rule or order, that member may not be allowed to vote or speak, unless by way of excuse for the breach, until the member has made satisfaction.

*Id.* ¶20, Ex. A.[1] No one appealed the Speaker's ruling to the full House at the time, but since then, the full House has twice voted against suspending the application of Rule 401(11) to Rep. Libby. *Id.* ¶¶9, 21, 41–42.

At present, Rep. Libby cannot participate in just two activities: floor debates or votes on matters under consideration by the full House. *Id.* ¶24. Those restrictions will end once she apologizes, if the House votes by two-thirds to dispense with Rule 401(11), or when the 132nd Legislature ends. *Id.* ¶25. In the meantime, Rep. Libby retains all other legislative privileges, including her committee assignment, her pay, her ability to introduce legislation, and her ability to make motions on the floor. *Id.* ¶¶27–38. Rep. Libby has exercised many of these

---

[1] House Rule 401(11) was adopted by unanimous consent of all members of the House in December of 2024. Fecteau Decl. ¶6. A version of House Rule 401(11) has been included in the House's rules of procedure since 1820. *See* House Rules, ch. 2, ¶ XV (1820) (ECF No. 28-1). The rule originated in the Massachusetts House, *see* Massachusetts House Rules, ¶28 (1802), *available at* https://tinyurl.com/y584ht25, and the first Maine House retained the rule upon Maine's separation from Massachusetts.

privileges since the censure. *Id.* ¶¶30–31, 40; Gresser Decl. Ex. 1 (ECF No. 30-1).

In recent years, there have been three censures of Maine Representatives prior to Rep. Libby, all of which involved their speech. Two representatives were censured in 2024 for remarks they made on the House floor. House Journal (Apr. 11, 2024) at 1723–24. Both apologized. *Id.* In 2001, a representative was censured for verbally abusing another member in the hallway outside the House chamber. House Journal (Feb. 8, 2001) at 145. He also apologized.[2]

## ARGUMENT

The standard for a preliminary injunction pending appeal is the same standard used when addressing a motion for a preliminary injunction. *Respect Me. PAC v. McKee*, 622 F.3d 13, 15 (1st Cir. 2010). Four factors control:

> (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest.

*Charlesbank Equity Fund II v. Blinds To Go, Inc.*, 370 F.3d 151, 162 (1st Cir. 2004) (quotation marks omitted). Appellants have the burden of proof, *Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas*, 445 F.3d 13, 18 (1st Cir. 2006), but they have not established any of the necessary factors.

---

[2] The resolutions and portions of House journals concerning these censures, which are subject to judicial notice as official legislative records, have been compiled by the Maine Legislature: https://legislature.maine.gov/discipline-of-maine-legislators.

I.     **Appellants are unlikely to succeed on the merits of their complaint because legislative immunity bars Appellants' claims.**

Legislative immunity protects legislators "from arrest or civil process for what they do or say in legislative proceedings." *Tenney v. Brandhove*, 341 U.S. 367, 372 (1951); *Romero-Barcelo v. Hernandez-Agosto*, 75 F.3d 23, 28 (1st Cir. 1996) ("[A]bsolute [legislative] immunity affords protection not only from liability but from suit."). The immunity extends not only to legislators, but to legislative aides and staff "insofar as the conduct of the latter would be a protected legislative act if performed by the [legislator her]self." *Gravel v. United States*, 408 U.S. 606, 618 (1972); *see also Massie v. Pelosi*, 72 F.4th 319, 323 (D.C. Cir. 2023) (concluding House Sergeant-at-Arms and Chief Administrative Officer were engaged in legislative acts when they enforced a U.S. House resolution through fines and salary garnishment), *cert. denied* 144 S. Ct. 1005 (2024).

A.     **All the conduct challenged by Appellants are legislative acts that are protected by legislative immunity.**

The protection afforded by legislative immunity applies to legislative acts, meaning either matters pertaining "to the consideration and passage or rejection of proposed legislation" or "*other matters which the Constitution places within the jurisdiction of either House*." *Gravel*, 408 U.S. at 625 (emphasis added).

The plain language of Maine's Constitution shows that all the conduct challenged by Appellants in their Complaint falls into one of these two categories.

The House adopted the resolution censuring Rep. Libby pursuant to its constitutional authority to "punish its members for disorderly behavior." Me. Const. art. IV, pt. 3, §4; *accord* U.S. Const. art. I, §5, cl. 2 (providing the same). The House adopted its rules pursuant to its constitutional authority to "determine the rules of its proceedings." Me. Const. art. IV, pt. 3, §4; *accord* U.S. Const. art. I, §5, cl. 2 (providing the same). The censure resolution and the adoption and application of House Rule 401(11)—all of which resulted from votes of the entire Maine House— are squarely within the jurisdiction of the House and are legislative acts. *See Massie*, 72 F.4th at 322-23 (adoption and enforcement of a U.S. House rule were legislative acts); *Rangel v. Boehner*, 785 F.3d 19, 24 (D.C. Cir. 2015) (House disciplinary proceedings are legislative acts). Indeed, each act challenged by Appellants, from the censure resolution to the vote tallying, has been "done in a session of the House by one [or more] of its members in relation to the business before it." *Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 630 (1st Cir. 1995) (quotation marks omitted).

Nevertheless, Appellants ask this Court for an injunction against only the Clerk and only to permit Rep. Libby to vote on the House floor. Mot. at 3.[3] They allege that the Clerk's "refusal" to count Rep. Libby's votes "is no legislative act"

---

[3] Appellants take umbrage with the district court's focus on Speaker, Mot. at 5, but the district court was simply following Appellants' lead. Their complaint includes exactly two references to the Clerk: in the caption and in paragraph 18.

and is not "essential to legislating." Mot. at 4, 5 (quotation marks omitted).

Appellants' bid to carve out the Clerk's tally from the legislative process ignores the larger context. First, the Clerk is not a mere "employee" of the Maine House. Maine's Constitution requires that House members elect both a Speaker *and* a Clerk. Me. Const. art. IV, pt. 1, §7. Indeed, the House *elected* Clerk Hunt to the position on December 4, 2024.[4] Further, the House must "keep a journal, and from time to time publish its proceedings" that includes vote counts on roll call votes. Me. Const. art. IV, pt. 3, §5. In other words, the recordation of House members' votes (or lack thereof) is also legislative conduct—regardless of whether an individual legislator or the Clerk tallies the vote.[5] Because passing legislation and voting are core legislative acts, *Cushing v. Packard*, 30 F.4th 27, 49 (1st Cir. 2022) (en banc) (voting); *Harwood*, 69 F.3d at 635 (passing legislation), the Court should reject Appellants' dubious claim that tallying votes, i.e., the process by which the House determines whether a measure has been passed, is somehow not a legislative act.

Neither *Kilbourn v. Thompson*, 103 U.S. 168 (1880), nor *Powell v. McCormack*, 395 U.S. 486 (1969), compels a different result. Mot. at 5-7. Both

---

[4] *Me. Leg. Archived Hearings & Meetings: House Chamber*, 132nd Legis., at 11:59:24 a.m. to 12:41:30 p.m. (December 4, 2024), https://legislature.maine.gov/Audio/#house_chamber?event=92009&startDate=2024-12-04T10:00:00-05:00.

[5] Only roll call votes must be included in the House's journal. Me. Const. art. IV, pt. 3, §5. Failure to request a roll call vote on a measure brought to the floor is deemed to be consent to the measure. Fecteau Decl. ¶6.

cases predated the Supreme Court's decision in *Gravel*, 408 U.S. at 618, which

recognized "that the Speech or Debate Clause applies not only to a Member but also

to his aides insofar as the conduct of the latter would be a protected legislative act if

performed by the Member himself." The Court explained:

> it is literally impossible, in view of the complexities of the modern
> legislative process ... for Members of Congress to perform their
> legislative tasks without the help of aides and assistants; [] the day-to-
> day work of such aides is so critical to the Members' performance that
> they must be treated as the latter's alter egos; and [] if they are not so
> recognized, the central role of the Speech or Debate Clause—to prevent
> intimidation of legislators by the Executive and accountability before a
> possibly hostile judiciary—will inevitably be diminished and
> frustrated.

*Id.* at 616–17 (citation omitted). *But cf. Powell*, 395 U.S. at 505-06 (rejecting the

reasoning *Gravel* adopted just three years later).

Cases after *Gravel* have focused on the nature of the act challenged, and not

the identity of the actor, to determine if legislative immunity attaches. *See, e.g.*,

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 504-07 (1975); *Doe v. McMillan*,

412 U.S. 306, 311-318 (1973). Similarly, *Gravel* distinguished *Kilbourn* based on

the nature of the act challenged: voting to adopt a resolution to arrest Kilbourn was

protected because it "was clearly legislative in nature," but actually *arresting*

Kilbourn was not a legislative act and therefore not protected. 408 U.S. at 618-19

(citing *Kilbourn*, 103 U.S. at 200-04). *Powell* has not been overruled explicitly, but

*Gravel* calls into question the aspects of the decision relied upon by Appellants. Mot

at 6-7.  As this Court has already reasoned, "in later cases" *Powell* "has routinely" been "confined" "to its unique facts." *Harwood*, 69 F.3d at 633.  Indeed, *Powell* is best understood as a qualifications case, which prohibits legislative bodies from imposing additional requirements on members-elect that are not stated in the governing constitution before they are seated or sworn in.  395 U.S. at 548; *see also Bond v. Floyd*, 385 U.S. 116, 136-37 (1966).

In sum, the Clerk's acts of tallying votes are also legislative acts that are protected by legislative immunity, not the mere execution of orders from the Speaker or the House itself.  *See McCarthy v. Pelosi*, 5 F.4th 34, 39–41 (D.C. Cir. 2021) (concluding legislative immunity protected the Speaker, House Clerk, and Sergeant-at-Arms from suit challenging enactment and enforcement of resolution that enabled U.S. House Members to cast votes by proxy).

### B.     The district court correctly applied this Court's precedent.

Although legislative immunity is broad, it does not extend to conduct that is determined to be of "extraordinary character." *Cushing*, 30 F.4th at 50-51.  The district court carefully examined this Court's precedent and determined that this case did not present circumstances of such an "extraordinary character" as to pierce legislative immunity.  Order at 18-31.  The Court reasoned that the "high bar" for conduct that would require judicial intervention had not been met.  As in *Cushing*, "the House took a vote on a formal request from a member," and the "Speaker then

8

enforced the will of the majority of the body by enforcing the plainly written sanction in the rule." Order at 21. *See also Harwood*, 69 F.3d at 632 ("A rule that colors the very conditions under which legislators engage in formal debate is indubitably part and parcel of the legislative process, and the acts of House officials (whether or not elected members) in enforcing it are" protected by legislative immunity).

Appellants discount both *Harwood* and *Cushing* because they claim the legislative rules at issue did not "single out" a legislator. Mot at 7-8. But, as the district court noted, Appellants "fail to acknowledge that their case is also about the application of a procedural rule." Order at 21. As in *Harwood*, the Maine House "adopt[ed] a rule, not invidiously discriminatory on its face, that bears upon its conduct of frankly legislative business" and the Speaker and Clerk have done "no more than carry out the will of the [Maine House] by enforcing the rule as a part of their official duties." 69 F.3d at 631 (citation omitted); *Bogan v. Scott-Harris*, 523 U.S. 44 at 54-55 (1998) (rejecting Court of Appeals position that conduct "was not legislative because their actions were specifically targeted at respondent"). Appellants also argue that Rep. Libby was targeted for her speech and the House engaged in "invidious viewpoint discrimination," Mot. at 9, but "[i]mmunity attaches even if a plaintiff alleges that a member has violated internal rules or the Constitution," *Massie*, 72 F.4th at 323-24. *See also Bogan*, 523 U.S. at 46–47, 55 (holding legislative immunity barred a First Amendment retaliation claim).

The "standard for an 'act' to be deemed of 'extraordinary character' is a most demanding one," such as ordering execution of an official by bill of attainder, as the Long Parliament did, or converting a legislative body into a court of capital punishment. *Cushing*, 30 F.4th at 50-51 (quoting *Kilbourn*, 103 U.S. at 204). That standard was not met in *Cushing*, in which legislators argued that a House rule that prohibited remote participation prevented them from carrying out their legislative obligations to their constituents. *Id.* at 34-35.

It is also not met here. As in *Cushing*, Defendants are "follow[ing]—rather than depart[ing] from—existing House rules that were overwhelmingly passed and that were predicated on a general handbook for setting such rules for all legislatures generally." *Id.* at 51. House Rule 401(11) has been a rule of the Maine House since 1820, and has been applied at least three times in modern history.

Appellants' "parade of horribles" does not move the needle. Mot. at 10-11. Legislative immunity is not limitless, but "[whatever may be the outer limits of the doctrine," "it is clear that the instant case is not so extreme as to cross (or even closely approach) the border." *Harwood*, 69 F.3d at 634 (rejecting similar arguments as Appellants make here). Although Rep. Libby cannot currently engage in certain acts, she is not precluded from, among other acts, sponsoring and co-sponsoring legislation, committee work, presenting motions on the House floor, lobbying other members, participating in legislative caucuses, and testifying on bills

in public hearings.  Fecteau Decl. ¶¶27–38.  And Rep. Libby could vote and debate on the House floor again if she complied with the censure resolution and apologized—an condition of ordinary character that is within Rep. Libby's control.

This case is far from the "high bar that *Kilbourn* plainly intended to set for stripping seemingly protected acts from the cover [legislative] immunity confers." *Cushing*, 30 F.4th at 52.  To conclude otherwise risks not only "intruding into internal state legislative affairs[,] but also" this Court's prescient warning: that "warring sides in partisan state legislators' battles" will "improperly enlist[] federal judges to participate in them."  *Id.*; *Monserrate v. New York State Senate*, 599 F.3d 148, 157 (2d Cir. 2010) ("Prudence dictates that a federal court should exercise a respectful reluctance to interfere in the measures taken by a state legislature to regulate its affairs, discipline its members, and protect its integrity and good name.").

## II.    Appellant Libby is unlikely to succeed on the merits of her First Amendment claim.

Appellant Libby incorrectly presumes that as a state legislator, she can raise a First Amendment retaliation claim against Defendants based on the *votes* of the Maine House.  She may not.

First, the Maine House can censure or reprimand Rep. Libby for her speech or conduct.  The Supreme Court has made clear that verbal censures or reprimands of legislators are not violations of the First Amendment.  *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 475 (2022).  Such censures are a "form of speech by elected

11

representatives," *id.* at 479, and are not materially adverse actions. Further, history and practice in colonial times and in the early days of the United States demonstrate that legislatures routinely censured their members "for views they expressed and actions they took both within and without the legislature." *Id.* at 475 (cleaned up).

Second, contrary to her claims, Mot. at 12-14, Rep. Libby does not have a First Amendment right to vote, as a legislator, on any particular piece of legislation. *See Nevada Commission on Ethics v. Carrigan*, 564 U.S. 117 *passim* (2011). In *Carrigan*, the Supreme Court concluded that a state's mandatory recusal statute that precluded state legislators from debating or voting on legislation upon which they had a disqualifying conflict of interest was not a violation of the First Amendment. 564 U.S. at 121–28. As Justice Scalia explained:

> But how can it be that restrictions upon legislators' voting are not restrictions upon legislators' protected speech? The answer is that a legislator's vote is the commitment of his apportioned share of the legislature's power to the passage or defeat of a particular proposal. The legislative power thus committed is not personal to the legislator but belongs to the people; *the legislator has no personal right to it*.

564 U.S. at 125–26 (emphasis added). The same holds true here. Rep. Libby does not have a First Amendment right to vote on any particular piece of legislation that comes before the House, and absent a right to vote she has no right to debate those bills. *See id.* at 121–22. *Carrigan* forecloses Rep. Libby's free speech retaliation claim.

Regardless, and contrary to Rep. Libby's claim, Mot. at 14, historical practice

supports that legislative bodies have the power to suspend a member, and thus preclude them from voting. *See Carrigan*, 564 U.S. at 122–25 (relying in part of the long history of recusal rules in law in this country applicable to legislators, none of which were ever thought to violate the First Amendment). During the colonial era, it was commonplace for legislative bodies to impose punishments such as imprisonment, suspension, and forced apology for rule breaches. *See* M.P. Clarke, *Parliamentary Privilege in the American Colonies* 190 (1971) (*Parliamentary Privilege)*.

For example, around 1784, the Massachusetts House suspended Maine Rep. Jeremiah Learned of Oxford while he was under indictment for "seditiously and riotously opposing the collection of public taxes." Luther S. Cushing, *Reports of Contested Elections* at 13 (1834), *available at* https://tinyurl.com/a5xdkrxv. Similarly, around 1808, Maine Rep. John Waite of Falmouth was "suspended from exercising the duties of a member" based on his conviction for forgery. *Id.* at 50. In 1902, the U.S. Senate found two members in contempt for a physical altercation. A Senate committee described the ruling as having the effect of "suspend[ing] their functions as Senators," a punishment "clearly within the power of the Senate." *See* U.S. Senate, *The Censure Case of John L. McLaurin and Benjamin R. Tillman of South Carolina*, *available at* https://www.senate.gov/about/powers-procedures/censure/090Tillman_Laurin.htm. In 1905, the Wisconsin Senate suspended a

13

member for eight months. I Wis. Sen. Journ., 47th Sess. at 862-641 (1905). Even though the U.S. House no longer chooses to suspend members, it has recognized that its authority to punish its members for disorderly behavior is not limited to expulsion or censure, but also includes "fine and suspension." H. Rept. No. 90-27, 90th Cong. 1st Sess., at 28 (1967).

History and practice also demonstrate that colonial legislative bodies, in exercising their authority to punish members, also routinely compelled their members to apologize for their words or conduct by "forced apology." *Parliamentary Privilege* at 104–5, 190. The practice continued after 1789,[6] and it exists today.[7] Thus, contrary to Appellants' contention, Mot. at 19 n.4, requiring

---

[6] The U.S. Congress compelled apologies of its members either through formal censure, threat of censure, or threat of investigation. In June of 1838, two members of the U.S. House voluntarily apologized for breach of order and decorum in the face of an impending vote on a resolution that would have required them to "apologize for violating its privileges and offending its dignity." 2 A. Hinds, Precedents of the House of Representatives §1648 at 1121–22 (1907) (Hinds). In 1843, the U.S. Senate voted not to censure Senator Tappan for disclosing confidential treaty materials to a newspaper in part because he "apologized and acknowledged his wrongdoing." A. Butler & W. Wolff, United States Senate: Election, Expulsion, and Censure Cases 1793–1990 at 47 (1995). In 1868, the U.S. House censured a member for offensive words used during debate, which required the member to "retract or explain his words and make a satisfactory apology." Hinds, §1248 at 799–800; *see also* Hinds, §§1257, 1646-47, 1657 at 808–10, 1120–21, 1135–37. In 1917, the Wisconsin Senate voted to censure a member and require him to sign a pre-drafted apology for his conduct; the member was expelled when he refused to sign. Wis. Sen. Journ., 53rd Sess. at 597–601 (1917).

[7] *See also* Rules of Order of the Louisiana Senate, 50th Reg. Sess. § 6.3(D), *available at* https://tinyurl.com/2ve333xa; Rules of Order of the Louisiana House of Representatives, 50th Reg. Sess. § 5.2(D), *available at*

Rep. Libby to apologize is not only well within the power of the Maine House, but is consistent with established practice. *See Carrigan*, 564 U.S. at 122–25.

Appellants discount these examples as meager, but they stand in stark contrast with *Boquist v. Courtney*, which wrongly concluded that "the prevailing view is that members of the legislature do not have the power to suspend members and therefore deprive them of the right to vote." 32 F. 4th 764, 783 (9th Cir. 2022).

Finally, *Wilson*, 595 U.S. 468; *Miller v. Town of Hull,* 878 F.2d 523 (1st Cir. 1989), and *Boquist*, 32 F. 4th 764, are of limited precedential value to this case. Each addressed First Amendment retaliation claims brought by legislators, but none addressed whether legislative immunity protected the conduct at issue.[8] *Cf. Bogan*, 523 U.S. at 46–47, 55 (holding legislative immunity barred a First Amendment retaliation claim). Indeed, *Wilson* took care to note the case was "narrow," and the Court was not addressing "any other claim or any other source of law." 595 U.S. at 482. Mot. at 15.

## III.    Appellants are unlikely to succeed on the merits of their Fourteenth Amendment claim.

---

https://tinyurl.com/4h6w3v7b; Okla. H. Jour., 59th Leg., 1st Reg. Sess. at 506–7 (Mar. 7, 2023) (censuring House member and stripping them of all committee assignments until they publicly apologized).

[8] *Miller* also was decided before the Supreme Court formally extended legislative immunity to municipal and local legislative bodies in *Bogan*. 523 U.S. at 54. Further, the Supreme Court's decision in *Carrigan*, 564 U.S. 117, effectively overruled *Miller* by concluding that legislators do not have a protected First Amendment right to their vote.

Appellants argue that the application of House Rule 401(11) to Rep. Libby violates the Fourteenth Amendment in various ways. Mot. at 16-19. None of these arguments are likely to succeed.

Courts considering equal protection challenges to legislative punishments have applied the familiar *Anderson-Burdick* balancing test used to assess voting and ballot-access restrictions. *See Monserrate*, 599 F.3d at 155. Under this "sliding scale" approach, courts must assess the "burdens, if any, placed on a plaintiff's constitutionally protected rights" and then evaluate "the precise interests put forward by the state as justifications for the burdens." *Libertarian Party of N.H. v. Gardner*, 638 F.3d 6, 14 (1st Cir. 2011). A state's "important regulatory interests" are "generally sufficient" to permit "[r]easonable, non-discriminatory restrictions" on constitutional rights. *Id.* Only "severe restrictions" require the provision to be narrowly tailored to serve a compelling governmental interest. *Id.*

The House's interests furthered by the censure are compelling. "It is fundamental that a legislature has an important interest in upholding its reputation and integrity." *Monserrate*, 599 F.3d at 155. Rep. Libby inflicted considerable damage on the House's reputation and integrity. Maine's Legislative Code of Ethics obliges members to protect the "security, safety, health, prosperity and general well-being" of those they serve." Fecteau Decl., Ex. B. In violation of that Code, Rep. Libby singled out a child based on their gender identity and, without the child's

16

consent, nationally publicized their name, school, and photograph, in the course of condemning the child's participation in a school event. Rep. Libby did so despite the child's right under Maine law, as a member of a protected class, to participate in the activity "without discrimination." 5 M.R.S.A. § 4602 (Supp. 2025). Given such egregious facts, the House had a strong interest in repairing the damage to its reputation and integrity by holding Rep. Libby to account for her misconduct.

On the other side of the ledger, the burden on Rep. Libby and her constituents is reasonable and non-discriminatory. Rep. Libby's constituents are not completely deprived of representation. Rep. Libby remains free to further the interests of her constituents in many ways: she can sponsor legislation, testify at hearings, deliberate and vote in her assigned committee, make motions on the House floor, use legislative staff and services, and provide constituent services. Fecteau Decl. ¶¶27–38. The record shows that Rep. Libby has in fact availed herself of many of these privileges. *Id.* ¶¶30–31, 40; Gresser Decl. Ex. 1. And, Rep. Libby can recover her full privileges at any time by apologizing. In short, the burden on Appellants is, at most, modest. Thus, on balance, the censure here imposes the same "less than severe" burden found in *Monserrate*. 599 F.3d at 155.

Appellants make no attempt to apply *Anderson-Burdick* balancing. They instead assert that House District 90 voters have been "disenfranchised" by operation of House Rule 401(11). But this argument improperly conflates voting in a popular

election with voting on the floor of the House. Voters are disenfranchised if they are barred from voting. They are not disenfranchised if they elect a person who then breaks House rules and is subjected to a limited and conditional punishment as a result. Mot. at 17. Indeed, even the 1970s district court decision relied upon by Appellants, *Kusinich v. Forbes*, 432 F. Supp. 1101 (N.D. Ohio 1977), is distinguishable in that the councilperson subject to punishment was completely suspended from his duties, unlike the targeted punishment at issue here.

In any event, the Second Circuit has more recently confirmed that enforcement of rules that, like Rule 401(11), apply equally to all members of a legislative body do not violate equal protection unless there is evidence of "invidious bias." *Monserrate*, 599 F.3d at 157. Rep. Libby's censure similarly was not some bespoke procedure designed to target her constituents. Rule 401(11) applies to all current House members, just as it has applied to every House member in Maine's history as a state. Other members have been subject to censures in recent years for similar conduct. *See supra* at 3. Under these facts, *Monserrate* holds that there is no equal protection violation.

*Bonas v. Town of North Smithfield*, 265 F.3d 69 (1st Cir. 2001), is also distinguishable. Mot. at 16-17. *Bonas* found a due process violation where (a) a municipality violated its own election laws and (b) that violation resulted in "a total and complete disenfranchisement of the electorate." *Id.* at 75. Even assuming *Bonas*

has any application outside of elections, neither of those factors exist here.

Appellants also assert that Rep. Libby's censure is "vote dilution."  Mot. at 16, 18.  But while showing vote dilution might be sufficient to establish standing, *see Gill v. Whitford*, 585 U.S. 48, 66 (2018), it does not automatically establish a constitutional violation.  *Cf. Brown v. Thomson*, 462 U.S. 835, 847-48 (1983) (permitting exceptions to the rule that legislative districts should have equal populations where there is a sufficient countervailing government interest).  Indeed, in the case Appellants cite for the proposition that barring a Representative from voting would be "vote dilution," Mot. at 18, the court found the plaintiffs to have standing only to reject their claim on the merits.  *See Michel v. Anderson*, 14 F.3d 623, 626 (D.C. Cir. 1994).  To the extent that Appellants' "vote dilution" theory is cognizable at all, it is simply an alternate framing of the same equal protection argument that fails under the *Anderson-Burdick* balancing discussed above.

## IV.    The remaining injunction factors favor Defendants.

Where movants fail to meet their burden to show a likelihood of success on the merits, "failure to do so is itself preclusive of the requested relief."  *Bayley's Campground, Inc. v. Mills*, 985 F.3d 153, 158 (1st Cir. 2021).  Because Appellants are unlikely to succeed on the merits, the other factors are of no moment.

Nevertheless, the balance of equities and public interest favor Appellees. Here, all members of the House, including Rep. Libby, agreed to the adoption of the

House Rules at the beginning of the Legislative session.  Fecteau Decl. ¶6.  In other words, Rep. Libby agreed that she would not be able to vote or debate if she was found in violation of a House rule or order, until she "made satisfaction."  *Id.*  Further, the censure of a sitting legislator is a significant act, and one that is undertaken sparingly.  If a legislator refuses to comply with the conditions of censure imposed by the House, the House must be able to punish that contumaciousness.  The legislative "power to make rules would be nugatory, unless it was coupled with a power to punish for disorderly behavior, or disobedience to those rules." *Whitener v. McWatters*, 112 F.3d 740, 744 (4th Cir. 1997) (quoting Joseph Story, *Commentaries on the Constitution of the United States* §419).  The balance of equities and the public interest lie with Appellees to ensure that the House can enforce rules to which all members have agreed.

## CONCLUSION

For the reasons set forth above, Appellants' motion should be denied.

Dated: April 23, 2025    Respectfully submitted,

          AARON M. FREY
          Attorney General

          /s/ Kimberly L. Patwardhan
          KIMBERLY L. PATWARDHAN
          Assistant Attorney General
          kimberly.patwardhan@maine.gov

          JONATHAN R. BOLTON
          Assistant Attorney General
          jonathan.bolton@maine.gov

          Office of the Attorney General
          6 State House Station
          Augusta ME  04333-0006
          Tel.  (207) 626-8800
          Fax (207) 287-3145

          Attorneys for Defendants-Appellees

**CERTIFICATE OF COMPLIANCE**

This response complies with the type-volume limitation, typeface requirements, and type style requirements of Federal Rule of Appellate Procedure 27(d).  This response contains 5185 words in 14-point Times New Roman font (excluding the parts of the response exempted by Rule 32(f)).


/s/ Kimberly L. Patwardhan
KIMBERLY L. PATWARDHAN
Assistant Attorney General
207-626-8570
kimberly.patwardhan@maine.gov

Office of the Attorney General
6 State House Station
Augusta, Maine 04333-0006

Attorney for Defendants-Appellees

## CERTIFICATE OF SERVICE

I, Kimberly L. Patwardhan, hereby certify that on April 23, 2025, I electronically filed the Defendants-Appellees' Response to Emergency Motion for Injunction Pending Appeal with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Kimberly L. Patwardhan
KIMBERLY L. PATWARDHAN
Assistant Attorney General
207-626-8570
kimberly.patwardhan@maine.gov

Office of the Attorney General
6 State House Station
Augusta, Maine 04333-0006

Attorney for Defendants-Appellees

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| LAUREL D. LIBBY, State Representative of Maine House District 90, RONALD P. LEBEL, WENDY MUNSELL, JASON LEVESQUE, BERNICE FRASER, RENE FRASER, and DONALD DUBUC, | |
| Plaintiffs, | Civil Action No. 1:25-cv-00083-MRD |
| v. | |
| RYAN M. FECTEAU, in his official capacity as Speaker of the Maine House of Representatives, and ROBERT B. HUNT, in his official capacity as Clerk of Maine House, | |
| Defendants. | |

**DECLARATION OF RYAN FECTEAU**
**(pursuant to 28 U.S.C. § 1746)**

I, Ryan Fecteau, hereby declare as follows:

1.       I am over the age of 18 and reside in Biddeford, Maine.

2.       I am currently serving my fifth term in the Maine House of Representatives (House).  I represent the people of House District 132, which includes portions of Biddeford.

3.       I am currently serving in the 132nd Legislature, which convened on December 4, 2024, and will end on December 2, 2026.  On December 4, 2024, I was elected Speaker of the House.

4.       I have presided as Speaker at every session of the House that has occurred since December 4, 2024, with the exception of portions of March 27, 2025, during the consideration of House Order 20 and House Order 21, and March 11, 2025, when I gave a speech on the floor of the House.

1

*Relevant House Rules and Procedures*

5.      Under article IV, part third, section 4 of the Maine Constitution, "[e]ach House may determine the rules of its proceedings, punish its members for disorderly behavior, and, with the concurrence of 2/3, expel a member, but not a 2nd time for the same cause."  Under this authority, the House on December 4, 2024, adopted the same rules that had governed the 131st Legislature to govern the 132nd Legislature.  A true and correct copy of the current House Rules is attached as Exhibit A.

6.      The House adopted the rules by unanimous consent ("under the hammer").  Under that process, after a measure is brought to the floor, members are given an opportunity to request a roll-call vote on the measure.  Failure to request a roll-call vote is deemed to be consent to the measure.  No one, including Representative Laurel Libby, who was present in the House chamber that day, requested a roll-call vote on the proposed House Rules.  All members thereby consented to the proposed rules.  No members moved to amend the House Rules by House Order in accordance with Rule 524.

7.      Rule 401 of the House Rules governs the rights and duties of members.  Subsection 11 of this rule provides that "When any member is guilty of a breach of any of the rules and orders of the House and the House has determined that the member has violated a rule or order, that member may not be allowed to vote or speak, unless by way of excuse for the breach, until the member has made satisfaction."

8.      Rule 522 of the House Rules provide that "The rules of parliamentary practice comprised in Mason's Rules govern the House in all cases in which they are applicable and in which they are not inconsistent with the standing rules and orders of the House and the joint rules of the Senate and House of Representatives."  Section 561 of Mason's Rules provides that "a

legislative body has the right to regulate the conduct of its members and may discipline a member as it deems appropriate, including reprimand, censure or expulsion."

9.       House Rule 201 details the powers and duties of the Speaker of the House.  Among those duties is to "[e]force the observance of order" and "[d]ecide all questions of order within 7 legislative days."  The Speaker's decision on a question of order is "subject to an appeal to the House."  In other words, while I make an initial determination on the application of the House Rules, that determination can be changed upon a vote of the House.

10.       As provided by statute (1 M.R.S.A. § 1023), the Legislature has also adopted a Code of Ethics.  The Code of Ethics was adopted by the 100th Legislature and amended by the 127th Legislature.  Under Joint Rule 354, the Joint Select Committee on Joint Rules must, at least once each biennium, "review the Legislative Code of Ethics that was adopted by the 100th Legislature and may recommend any changes the committee determines necessary."  A true and correct copy of the current Legislative Code of Ethics is attached as Exhibit B.

11.       Under the Code of Ethics "[a] Maine Legislator is charged with civility and responsible conduct inside and outside of the State House commensurate with the trust placed in that Legislator by the electorate."  The Code further provides that "[i]n a free government, a Legislator is entrusted with the security, safety, health, prosperity, respect and general well-being of those the Legislator serves and with whom the Legislator serves."  The Code also requires Legislators to be "ever mindful of the ordinary citizen who might otherwise be unrepresented" and to "endeavor conscientiously to pursue the highest standards of legislative conduct inside and outside of the State House."

*Representative Libby's Facebook Post and Resulting Censure*

12.     On the morning of February 18, 2025, I viewed the Facebook post by Rep. Libby at issue in this case which is included in Plaintiffs' Complaint at page 9.  The post identified a transgender high-school student in Maine by first name and school and included photographs of the student.  Some of the faces of other students in the photos—but not the transgender student's— were blurred out.  The post identified the student in the context of criticizing the student's participation in a girl's high school sporting event in Maine.

13.     The same day, I sent a letter to Rep. Libby asking her to take down her Facebook post.  The letter acknowledged Rep. Libby's right to express policy positions but expressed concern that publicizing the student's identity would threaten the student's health and safety.  A true and correct copy of my letter is attached as Exhibit C.

14.     Rep. Libby did not respond to my letter.  That evening, I called Rep. Libby to follow up on my letter.  In the ensuing conversation, Rep. Libby refused my request to take down her post.

15.     In the ensuing days, Rep. Libby's Facebook post became national news, and Rep. Libby appeared on national television and radio broadcasts discussing the post, further heightening the risks and harms to the student.

16.     The Legislature was not in session between February 17, 2025, and February 21, 2025.  No work sessions, public hearings, or sessions of either legislative body occurred during this time period.  The next scheduled session of the House occurred on February 25, 2025.

17.     On February 25, 2025, Representative Matt Moonen presented to the House H.R. 1, "A Resolution Relating to the Censure of Representative Laurel D. Libby of Auburn by the

Maine House of Representative" (Resolution). A true and correct copy of the Resolution is attached as Exhibit D.

18.     Following debate, the Resolution was adopted by a vote of 75 to 70.

19.     Following enactment of the Resolution, I called Rep. Libby to the well of the House Floor and, as is customary following censure, formally admonished the representative's breach of the Legislative Code of Ethics and provided Rep. Libby the opportunity to provide an apology to the House and the public, per the terms of the enacted resolution. Rep. Libby did not apologize.

20.     Once Rep. Libby refused to apologize, I exercised my duty as Speaker to rule her in violation of House Rule 401(11), and therefore barred from casting a vote or participating in debate on the House floor until she made satisfaction by coming into compliance with the Resolution.

21.     No member, including Rep. Libby, made any objection to my ruling.

22.     The House then adjourned for the day.

*Consequences of the Censure*

23.     As noted above, Rule 401(11) provides that a member found in breach of House rules or orders "may not be allowed to vote or speak" until they "make satisfaction."

24.     As I have interpreted and applied Rule 401(11), Rep. Libby is prohibited from two activities: (1) engaging in debate on the House floor and (2) voting on legislative instruments and other matters under consideration by the full House.

25.     These prohibitions will end when any one of three things occurs: (1) Rep. Libby apologizes for her conduct, (2) the House votes to dispense with Rule 401(11), or (3) the 132nd Legislature ends. Under House Rule 523, dispensation of a House rule requires the consent of two-thirds of the members present.

26.     Between the date of the censure and the date I signed this declaration, no House floor votes have been tied or decided by a one-vote margin.

27.     Despite the censure, Rep. Libby continues to enjoy considerable means to advance and oppose legislation and otherwise represent her constituents.

28.     Rep. Libby retains her existing committee assignment, which is to the Joint Standing Committee on Labor (the "Labor Committee").

29.     Rep. Libby continues to be allowed to sponsor and co-sponsor bills and resolutions. All such bills and resolutions are assigned a legislative document ("L.D.") number and referred to the appropriate Joint Legislative Committee of jurisdiction.

30.     Legislative records indicate that, in the current Legislature, Rep. Libby has sponsored 11 bills and cosponsored another 29 bills.  Rep. Libby also continues to be able to lobby other members to support or oppose legislation in any setting other than formal debate on the floor of the House and to participate in legislative caucus meetings.

31.     Sponsors of legislation are invited to give presentations about their bills to the relevant committees of jurisdiction.  Those committees also hold public hearings in which they hear testimony from the public and other interested parties, including legislators, concerning legislation under their consideration.  Rep. Libby continues to be allowed to present her bills to the relevant committee and to testify at public hearings concerning any legislation.  For example, on March 5, 2025, I saw (via video feed) Rep. Libby present LD 671, "An Act to Abolish the Maine Income Tax and Establish a Zero-based Budget," at a public hearing held by the Committee on Taxation.

32.     Rep. Libby continues to be allowed to fully participate in the activities of the Labor Committee, including (a) participating at public hearings and work sessions and (b) voting on

motions, including motions to amend legislation referred to the Labor Committee and motions to report referred legislation back to its originating chamber as "Ought to Pass," "Out to Pass as Amended," or "Ought Not to Pass."

33.     House procedures allow for fast-tracking legislation that receives a unanimous "Ought to Pass" report from the relevant Committee through a mechanism known as the "Consent Calendar."  Because Rep. Libby retains her voting privileges on the Labor Committee, she can prevent legislation referred to the Labor Committee from being placed on the Consent Calendar by voting against the legislation, even if all other members of the Labor Committee support it.

34.     Rep. Libby may be present on the House floor during debates and votes and is permitted to engage in procedural actions, such as making motions and raising objections, as long as she does not participate in the debate on such procedural actions.  She can, for example, move to amend a bill or to indefinitely postpone a bill, which, if approved, defeats it.

35.     Rep. Libby may continue to use legislative staff and offices to support her work as a legislator to the same extent as before the censure.  She continues to have access to the services offered by the Revisor of Statutes, which assists with legislative drafting, the Clerk's Office, which assists with matters of parliamentary procedure, and the Office of Policy and Legal Analysis, which analyzes the substance of proposed legislation.  Although I do not know the extent to which Rep. Libby had the assistance of partisan legislative staff prior to her censure, the censure does not limit her continued access to such staff.

36.     Rep. Libby continues to receive her full compensation as a member of the Legislature, including her stipend and any benefits she might receive.

37.     Rep. Libby remains eligible for her constituent service allowance, which defrays the cost of communicating with and providing services to her constituents and is paid out in December and at the end of the legislative session.

38.     Rep. Libby continues to be entitled to travel-related expenses and meal allowances in accordance with 3 M.R.S. § 2.

*Failed Attempt to Suspend Rule 401(11)*

*39.*     On March 20, 2025, the House was engaged in debate of the State's biennial budget, L.D. 609.  Rep. Libby was present.

40.     Although, per the terms of Rule 401(11), Rep. Libby was not permitted to participate in debate, Rep. Libby did introduce amendments to L.D. 609.  Rep. Libby in fact proposed 8 such amendments that were then debated by the House.  Rep. Libby's motions will be recorded in the House Journal.

41.     At one point during the debate on L.D. 609, another member moved to dispense with Rule 401(11) in order to allow Rep. Libby to participate in debate.  After thorough debate, the motion failed in a vote of 68 to 74.

42.     On March 25, 2025, a second motion was made on the floor to dispense with Rule 401(11) in order to allow Rep. Libby to vote and participate in debate.  That motion also failed 68 to 74.

43.     As of the signing of this declaration, Rep. Libby has not apologized to the House for her conduct.

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated:  April 1, 2025                                   /s/ Ryan Fecteau_____
                                                        Ryan Fecteau

EXHIBIT A

# HOUSE RULES

## 132nd MAINE LEGISLATURE

### Adopted December 4, 2024

# RULES OF THE HOUSE - INDEX

## 132nd LEGISLATURE

| Rule | Number |
|------|--------|

Adjournment motion.................................................................503
Amendments
    Consideration ...................................................................504
    Germaneness ....................................................................506
    Printing ...............................................................................507
Assistant Clerk.......................................................................103
Assistant Sergeant-at-arms, appointment ...................... 201, Sec. 1, Par. I, Sub-Par.(b)
Bills and Resolves
    Engrossment.....................................................................517
    Examination .............................................................. 515; 517
    Form and introduction.............................................. 514; 518
    Readings .................................................................... 516; 517
    Sponsor obtains signatures.............................................401, Sec. 13
    Statutory provisions, House proceedings...........................107
    Transmittal to Senate.....................................................520
    Veto ...................................................................................521
Bills in the Second Reading Committee....................................201, Sec. 1, Par. J; 515
Blanks, filling .........................................................................505
Business
    Order .................................................................................501
    Quorum necessary.....................................................201, Sec. 1, Par. A
    Time for consideration ...................................................505
    Unfinished ........................................................................502
Calendar.................................................................................301, Sec. 12
Chaplains ................................................................................101
Clerk
    Duties ................................................................................301
    Responsibility for legislative papers ......................301; 401, Sec. 10; 511
    Vacancy in office .............................................................103
Clerk pro tempore..................................................................103

Committees
    Appointment................................................................201, Sec. 1, Par. J; 301, Sec. 4
    Business.....................................................................................301, Sec. 4
    Joint Standing Committees, reports ...................................................................519
    Standing Committees .................................................................201, Sec. 1, Par. J
Consent Calendar..............................................................................................519
Courier, appointment ...................................................... 201, Sec. 1, Par. I, Sub-Par.(b)
Debate, relevance.......................................................201, Sec. 1, Par. M; 401, Sec. 5
Decorum .................................................................201, Sec. 1, Par. D; 401, Sec. 6
Division of questions ........................................................................................504
Document Clerk, appointment.......................................... 201, Sec. 1, Par. I, Sub-Par.(b)
Doorkeeper, appointment ............................................... 201, Sec. 1, Par. I, Sub-Par.(b)
Elections Committee.................................................................201, Sec. 1, Par. J
Elections of the House
    Conduct of members ..................................................................401, Sec. 12
    Time ..........................................................................................................512
Electronic Devices ..................................................................................... 108; 109
Engrossed Bills Committee .......................................................201, Sec. 1, Par. J; 517
Ethics Committee ....................................................................201, Sec. 1, Par. J
Expressions of Legislative Sentiment ...................................................................519
Guests, admission .............................................................................................106
Hall of the House, floor privileges ............................................................... 105; 106
Houlton Band of Maliseet Indians,
    privileges of representative .........................................................................525
Joint Conventions ...........................................................................................108
Journal
    Decisions re points of order entered ......................................................301, Sec. 13
    Notice of new or changed rules........................................................................524
    Preparation ..............................................................................301, Sec. 1
    Reading ......................................................... 201, Sec. 1, Par. A; 501
Leave of Absence Committee .......................................201, Sec. 1, Par. J; 401, Sec. 9
Legal counsel, appointment.............................................................201, Sec. 2, Par. B
Lobbyists, restrictions .......................................................................................105
Mason's Rules..................................................................................................522
Members
    Approach to the rostrum................................................................401, Sec. 3
    Attendance .........................................................................................401, Sec. 9
    Conflict of interests ...................................................... 401, Secs. 8 and 12
    Decorum .............................................................201, Sec. 1, Par. D; 401, Sec. 6
    Leave of Absence ...................................................... 401, Secs. 9 and 10
    Loss of privileges ................................................................................401, Sec. 11

Observance of rules.................................................................102; 401, Sec. 11
Photograph…………………………………………………… 401, 7-A
Recognition ................................................................................201, Sec. 1, Par. K
Seats ..........................................................................................401, Sec. 1; 525
Signature on amendments ..........................................................507
Signature on bills and resolves..................................................401, Sec. 13; 514
Speeches
    Interruptions ........................................................................401, Sec. 6
    Manner .................................................................................401, Sec. 4
    Number allowed ...................................................................401, Sec. 7
    Voting required ....................................................................401, Sec. 12
Memorials, form and introduction..............................................514
Monitors......................................................................102; 201, Sec. 1, Par. L
Motions
    Action on or withdrawal......................................................508
    Precedence............................................................................ 503, Par. A
    Questions of Concurrence, precedence ...............................503, Par. B
National Anthem.........................................................................101
Orders
    Action on ..............................................................................508
    Amendment ...........................................................................524
    Appearance on Calendar ......................................................301, Sec. 12
    Dispensation .........................................................................523
Orders of the day ........................................................................ 501; 502
Pages, appointment.................................................... 201, Sec. 1, Par. I, Sub-Par.(b)
    Honorary .............................................................................201, Sec. 2, Par. A
Pairing of Votes ..........................................................................401, Sec. 2
Parliamentary practice ...............................................................522
Partisan staff, appointments.......................................................104
Passamaquoddy Tribe,
    privileges of representative .................................................525
Penobscot Nation,
    privileges of representative .................................................525
Petitions, form and introduction ................................................514
Points of Order..............................201, Sec. 1, Par. E; 201, Sec. 2, Par. C; 301, Sec. 13
Press, admission..........................................................................106
Previous question........................................................................504
Questions of order (See Points of Order)
Quorum........................................................................................201, Sec. 1, Par. A
Reconsideration .......................................................................... 508; 511
Reed's Rules................................................................................522
Revisor of Statutes, Director ......................................................515

Riders, prohibited ...............................................................................506
Roll Calls
    Motion ........................................................................... 504; 510
    Record ........................................................................301, Sec. 3
    Voting Required ........................................................401, Sec. 12
Rules
    Amendments ...................................................................524
    Authorities .....................................................................522
    Dispensation ..................................................................523
    Enforcement ...........................................102; 201, Sec. 1, Par. L
Rules and Business of the House Committee......................201, Sec. 1, Par. J
Sergeant-at-arms, appointment....................... 201, Sec. 1, Par. I, Sub-Par.(b)
Sessions, daily, 9 p.m. limit...................................................................501

Speaker
    Announcement of business .........................................201, Sec. 1, Par. B
    Appointment of committees................................ 201, Sec. 1, Pars. I and J
    Appointment of subordinate officers ...........................201, Sec. 1, Par. I
    Appointment, rescinding .......................................... 201, Sec. 1, Par. I
    Change of seating ...................................................401, Sec. 1
    Declaration of votes .................................... 201, Sec. 1, Par. C; 509; 510
    Duties and powers ...............................................................201
    Duties, relevance of debate ........................................201, Sec. 1, Par. M
    Notice re engrossed bills and resolves ...............................................520
    Points of order, discussion and decision ........201, Sec. 1, Par. E; 201, Sec. 2, Par. C
    Recognition of members ...........................201, Sec. 1, Par. K; 401, Sec. 7
    Rules and Business of the House Committee ...............201, Sec. 1, Par. J
    Signing of Bills ...................................................201, Sec. 1, Par. G
    Voting by Members, regulations................................. 401, Secs. 2 and 12
    Voting privileges...................................................201, Sec. 2, Par. D
Speaker pro tempore.....................................201, Sec. 1, Par. H; 301, Sec. 8
Standing Committees (See Committees)
Supreme Judicial Court, Opinion of the Justices.....................................513
Tabling motion ....................................................................... 503; 511
Vetoes ...............................................................................................521
Votes and Voting
    Conduct of members ............................................ 401, Secs. 11 and 12
    Pairing .............................................................................401, Sec. 2
    Procedures when doubted .....................................................509
Yeas and Nays (See also Roll Calls) .........................................................510

# RULES OF THE HOUSE

## 132nd LEGISLATURE

**Preamble.**  These rules of the House of Representatives are adopted pursuant to the Constitution of Maine to assist in carrying out the responsibilities of the House of Representatives.  These rules take precedence over the Joint Rules, statutes enacted by a prior Legislature relating to the proceedings of the House and other rules used in Legislative assemblies.  These rules govern the proceedings of the House in all matters, subject only to the requirements of the Constitution of Maine.

## PART 1

## GENERAL PROVISIONS

**Rule 101.  Chaplains.**  Every morning the House on assembling shall join with the Chaplains in religious service.  On the first legislative day of each week, the National Anthem must follow the religious service.  Every morning the House after assembling shall recite the pledge of allegiance.

**Rule 102.  Monitors.**  A monitor shall see to the observance of the rules of the House.  If any member violates any of the rules of the House and persists in violating the rules after being notified of the violation by any monitor, the monitor shall give information of the violation to the House.

**Rule 103.  Vacancy in the office of Clerk or Assistant Clerk.**  A Clerk or Assistant Clerk is either appointed or elected in the following circumstances.

    A.  In the case of a vacancy in the office of Clerk:
        (1)  When the Legislature is in session, the House elects a Clerk; or
        (2)  When the Legislature is not in session, the Assistant Clerk is Clerk pro tempore to serve until the Legislature is in session and elects a Clerk.

B.  In the case of a vacancy in the office of Assistant Clerk:
> (1)  When the Legislature is in session, the House elects an Assistant Clerk; or
> (2)  When the Legislature is not in session, the Speaker shall appoint an Assistant Clerk to serve until the Legislature is in session and elects an Assistant Clerk.

C.  In the case of a vacancy in the offices of the Clerk and Assistant Clerk:
> (1)  When the Legislature is in session, the House elects a Clerk and Assistant Clerk; or
> (2)  When the Legislature is not in session, the Speaker shall appoint a Clerk and Assistant Clerk to serve until the Legislature is in session and elects a Clerk and Assistant Clerk.

**Rule 104.  Partisan staff.**  The floor leaders shall appoint partisan staff with staffing patterns determined by House leadership.

**Rule 105.  Lobbyists banned from House floor.**  One-half hour before the beginning of any regularly scheduled session, registered lobbyists are banned from the floor of the House of Representatives.

**Rule 106.  Admission to Representatives' hall.**  Only a member or officer of the House, a member of the Senate, the Secretary of the Senate, the Assistant Secretary of the Senate, the Governor, heads of state departments and bureaus, Justices of the Supreme Judicial Court, Chaplains of the Senate and reporters of the proceedings and debates of the House may be admitted within the Representatives' hall, unless invited by some member of the House.  While the House is in session, only members and officers of the House and officers of the Senate on official business are admitted inside the rail, except members of the press, who shall occupy places at the press table, and guests of the Speaker.

**Rule 107.  Legislation establishing House proceedings statutorily.**  A member may question the appropriateness of a bill that attempts to establish proceedings of the House in statute.  Such legislation may be ruled not properly before the House by the Speaker.

**Rule 108.  Conduct during joint conventions.** During joint conventions, and at any time so determined by the presiding officer, personal electronic communication devices in the chamber or the gallery must be turned off and inconspicuously placed.

**Rule 109.  Use of personal electronic communication devices.**  During all sessions of the House, a member shall restrict that member's use of all personal electronic communication devices to personal business and business of the House and shall in such use exercise high standards of discretion, conduct and decorum.

## PART 2

## SPEAKER

## Rule 201.  Duties and Powers of the Speaker

**1.  Duties.**  The Speaker shall:

> A.  Take the chair at the hour to which the House has adjourned, call the members to order and, after the appearance of a quorum, cause the journal of the preceding day to be read;
>
> B.  Announce the business before the House in the order in which it is to be acted upon;
>
> C.  Receive, submit to vote and announce the result of all motions that are in proper order and that arise in the course of proceedings;
>
> D.  Enforce the observance of order and decorum;
>
> E.  Decide all questions of order within 7 legislative days, subject to an appeal to the House;
>
> F.  Receive all messages and other communications and announce them to the House;

G.  Authenticate by the Speaker's signature bills that have passed to be enacted and resolves that have finally passed;

H.  Name a member to perform the duties of Speaker during the Speaker's absence;

I.  Appoint and may rescind the appointments of the following individuals at any time:
      (a)  The members who are to serve on committees; and
      (b)  A sergeant-at-arms, an assistant sergeant-at-arms, a document clerk, doorkeepers, a courier and 5 pages;

J.  At the commencement of the session, appoint the following standing committees:
      (a)  On Leave of Absence;
      (b)  On Bills in the Second Reading;
      (c)  On Engrossed Bills;
      (d)  On Ethics;
      (e)  On Elections; and
      (f)  On Rules and Business of the House.

Each committee consists of 8 members, except the Committee on Rules and Business of the House, which consists of 3 members and the Speaker ex officio.  Each committee shall consider and report on all subjects referred to the committee;

K.  Name the person to speak when 2 or more members rise at the same time; in other instances, recognize the member who rises first and addresses the chair;

L.  Appoint one monitor for each division of the House; and

M.  Decide whether debate is relevant to some definite question under consideration.

2. **Powers.** The Speaker may:

    A. Appoint honorary pages;

    B. Appoint legal counsel while the Legislature is in session;

    C. Address the House on points of order, in preference to other members; and

    D. Vote in all cases.

## PART 3

## CLERK

**Rule 301. Duties of the Clerk.** The Clerk shall:

1. **Journal.** Keep a journal of what is done by the House;

2. **Read papers.** Read papers when required by the House or Speaker;

3. **Note answers of members.** Note the answers of members when the House orders or when a question is taken by yeas and nays;

4. **Notify members of committee appointments.** Notify members of their committee appointments and of the business referred to committees;

5. **Authenticate by Clerk's signature.** Authenticate by the Clerk's signature all the orders and proceedings of the House not authenticated by the Speaker;

6. **Responsible for documents.** Have responsibility for all the documents and papers of every kind confided to the care of the House;

7. **Transmit messages and papers.** Transmit all messages and papers from the House to the Governor or to the Senate;

**8. Preside in Speaker's absence.** Preside in the case of the absence of the Speaker or Speaker pro tempore at the hour for meeting, until a Speaker pro tempore is chosen;

**9. File papers and documents.** File in an orderly manner at the close of the session all papers and documents in possession of the House that were passed upon or received during the session;

**10. Preside at commencement of next Legislature.** Preside at the commencement of the next Legislature until the election of the Speaker;

**11. Record House business.** Record what is done by the House until a new Clerk is chosen and qualified;

**12. Prepare daily calendar.** Prepare a daily calendar of bills, resolves and other papers assigned for that day's consideration, bills and resolves that have had their first reading, showing the disposition of each, and orders presented to the Clerk by members;

**13. Enter questions on journal.** Enter every question of order that is decided on appeal on the journal of the House with the decision of every question. The journal must include all rulings of the Chair; and

**14. Payroll of House Employees.** Certify vouchers of the officers and employees of the House for proper payment.

# PART 4

# MEMBERS

**Rule 401. Rights and duties of members.** Members of the House have the
following rights and duties.

**1. Member's seat.** The seat a member draws at the commencement of the session
is that member's during the session, unless the member has leave of the Speaker to
change it. No other person may occupy a member's seat at any time during a
session of the House.

**2. Pairing of votes.** A member may not pair that member's vote with the vote of
another member.

**3. Sit at Speaker's or Clerk's desk.** A member may not sit at the desk of the
Speaker or Clerk, except by the permission of the Speaker.

**4. Member may not speak.** A member may not speak without first rising and
addressing the Speaker and being recognized, and a member may not speak while
away from that member's seat without leave from the Speaker. A member shall sit
down as soon as the member is done speaking.

**5. Debate.** A member shall limit debate to that which is relevant to some definite
question under consideration.

**6. May not interrupt.** A member may not interrupt another member while the
other is speaking, except to call to order or correct a mistake. A member may not
stand up to the interruption of another while any member is speaking, pass
unnecessarily between the Speaker of the House and the person speaking, stand in an
aisle or sit or stand covered during the session of the House.

**7. Speak more than twice.** A member may not speak more than twice to the
same question without first asking leave of the House. Any other member
objecting to that member speaking more than twice to the same question must
stand and be recognized by the Speaker of the House and the objection must be
noted.

12

**7-A.  May not video or photograph during deliberations.**  A member may not video or photograph other members of the House during deliberations.

**8.  Counsel.**  A member may not act as counsel for any party before a joint committee of the Legislature or a committee of the House.

**9.  Leave of absence.**  A member may not be absent more than 2 days without leave of the House; and a member may not have such a leave, unless it is reported by the Committee on Leave of Absence.

**10.  Papers.**  Any member having obtained leave of absence shall leave any papers relating to the business before the House with the Clerk.

**11.  Breach of rules.**  When any member is guilty of a breach of any of the rules and orders of the House and the House has determined that the member has violated a rule or order, that member may not be allowed to vote or speak, unless by way of excuse for the breach, until the member has made satisfaction.

**12.  Voting.**  A member who is in the House when a question is put shall vote, unless the presiding officer for reasons excuses that member.  When yeas and nays are ordered, a member may not leave the member's seat until the vote is declared. A call for yeas and nays must close no more than 30 minutes after a roll call is commenced.  In all elections by the House, or on joint ballot of the Chambers, a member may not leave the member's seat after voting, before a return of the House is had.  A member may not vote on any question before the House when that question immediately involves that member's private right as distinct from the public interest. With approval from the Speaker upon as prompt notice as possible from the member, a member is excused from house deliberations and roll calls for a debilitating or incapacitating major illness or injury; the member must contact the Speaker and Clerk upon return.

**13.  Sponsor obtains signatures.**  A bill or resolve in final form that is ready for signature whose primary sponsor is a member of the House may be circulated for signatures only by the sponsor or cosponsors of that bill or resolve, except that legislation presented by a department, state agency or the Governor may be circulated by agents of the department, the state agency or the Governor.  This does not preclude a bill or a resolve from being held for signature in the Office of the Speaker of the House, the offices of the minority or majority party or the Office of the Revisor of Statutes.

# PART 5

## PROCEEDINGS AND DEBATES

**Rule 501.  Order of business.**  After reading of the journal, the following is the order of business:

    1st.  Senate papers;

    2nd.  Messages and documents from the Senate, the executive, heads of departments and others;

    3rd.  Reception of petitions, bills and resolves requiring reference to any committee;

    4th.  Orders;

    5th.  Expressions of legislative sentiment - Special sentiment calendar;

    6th.  Reports of committees and first reading of accompanying bills and resolves;

    7th.  Consent calendar - First Day;

    8th.  Consent calendar - Second Day;

    9th.  Bills and resolves reported by the Committee on Bills in the Second Reading and on their passage to be engrossed;

    10th.  Bills on their passage to be enacted; and

    11th.  Orders of the day.

    A paper may not be taken up out of its regular order.  Business may not be transacted in the House after the hour of 9:00 p.m.

**Rule 502.  Unfinished business.**  The unfinished business of the House at the time of the last adjournment has preference in the orders of the day and continues to be among the orders of the day for each succeeding day until action on it is completed.

**Rule 503.  Motions and concurrence.**  The following rules apply to motions and questions of concurrence with the Senate.

    A.  When a question is under debate, a motion may not be received, except a motion:

        1st.  To adjourn;

        2nd.  To table unassigned;

        3rd.  For the previous question;

        4th.  To commit;

        5th.  To table to a day certain;

        6th.  To amend; or

        7th.  To postpone indefinitely.

These motions have precedence in the order in which they are arranged.  A motion to adjourn must be decided without debate.

    B.  Questions of concurrence with the Senate have precedence in the following order:

        1st.  To recede;

        2nd.  To concur;

        3rd.  To insist; or

        4th.  To adhere.

**Rule 504.  Previous question.**  When a motion for the previous question is made, the consent of one third of the members present is necessary to authorize the Speaker to entertain the motion.  Debate is not allowed until the matter of consent is determined.  The previous question must be submitted in the following words: Shall the main question be put now? A member may not speak more than 5 minutes on the motion for the previous question.  A call for the yeas and nays or for division of a question is in order after the main question has been ordered to be put.  After the adoption of the previous question, the vote must be taken upon amendments and then upon the main question.

**Rule 505.  Consideration of business.**  In filling blanks and assigning times for the consideration of business, the longest time must be put first.

**Rule 506.  Germane amendments.**  An amendment must be germane to the proposition under consideration.

**Rule 507.  Printing and distribution of amendments.**  An amendment to a bill or resolve may not be acted upon by the House until the same has been printed and distributed to the members under the direction of the Clerk, unless the same bears the recommendation of the Committee on Rules and Business of the House that such printing be dispensed with; and any amendment not so printed or bearing such recommendation must lie on the table until printed or until the Committee has recommended that such printing be dispensed with.  All amendments filed with the Clerk for printing must bear the signature of the member filing the same.

A House amendment that strikes and replaces in total a committee amendment is not properly before the House.

**Rule 508.  Withdrawal of motion, order or amendment.**  A motion, order or amendment may be withdrawn by a sponsor only prior to a vote, except that a motion to reconsider may be withdrawn only with consent of the House.

**Rule 509.  Process when declared vote doubted.**  When a vote declared by the Speaker is doubted, the members for and against the question, when called on by the Speaker, shall vote again without further debate.

**Rule 510.  Yeas and nays.**  A call for the yeas and nays is in order at any time before a vote is made certain and declared.

**Rule 511.  Motion to reconsider.**  When a motion has been made and carried in the affirmative or negative, it is in order for any member who voted with the prevailing side, or in the negative on a tie vote, to move to reconsider on the same or succeeding day.  A motion to reconsider may not be tabled unassigned.  A motion to reconsider is not in order more than once on the same question.  When a member moves or gives notice of the member's intention to move a reconsideration of any vote, the papers to which the motion relates must remain in possession of the Clerk until the question of reconsideration has been decided, or the right to move such a question is lost.  Notwithstanding the provisions of this rule, any member may move for reconsideration of a committee reference on the floor.  A majority vote is necessary to overturn the original committee of reference.

16

**Rule 512.  Elections.**  In all elections by ballot of the House a time must be assigned for the election at least one day prior to the election.

**Rule 513.  Opinion of justices.**  A proposition to require the opinion of the justices of the Supreme Judicial Court, as provided by the Constitution, may not be acted upon until the next day after the proposition is made.

**Rule 514.  Signature required.**  All petitions, memorials and other papers addressed to the House, and all bills and resolves to be introduced in the House, must bear the signature of the member or member-elect presenting them.

**Rule 515.  Second reading.**  All bills and resolves in their Second Reading must be committed to the standing Committee on Bills in the Second Reading to be examined and corrected.  The Revisor of Statutes is the clerk of the Committee on Bills in the Second Reading.

**Rule 516.  Two several readings.**  A bill may not pass to be engrossed until the bill has had 2 several readings; the House shall assign the time for the second reading.  Every resolve that requires the approval of the Governor must have 2 several readings.

**Rule 517.  Engrossed bills.**  All engrossed bills and resolves must be committed to the standing Committee on Engrossed Bills to be strictly examined; if found by the committee to be truly and strictly engrossed, the committee shall so report to the House, and the question must be taken without any further reading.  The Speaker of the House may order any bill or resolve to be engrossed upon its introduction to the House.

**Rule 518.  Report by committee.**  A bill or resolve must be reported by a committee.

**Rule 519. Special consent calendar.** A bill or resolve that bears a unanimous Ought to Pass or Ought to Pass as Amended report by the committee to which it has been referred, upon notification to the House, must, without further action, be placed by the Clerk upon the special consent calendar and remain there for 2 legislative days; the bill or resolve, at the termination of these 2 days, is considered as passed to be engrossed. Upon objection of any member to the placement or retention of any bill or resolve on the consent calendar, that bill or resolve ceases to be a consent calendar bill. If a bill or resolve is taken from the special consent calendar, the first order of business with respect to the bill or resolve must be whether to accept the committee report.

Any expression of legislative sentiment must be placed by the Clerk upon a special consent calendar and remain there for one legislative day. At the end of the legislative day the legislative sentiment is considered passed or adopted. Upon objection of any member to the placement or retention of such an expression on the consent calendar, the legislative sentiment must be removed and the question before the House is passage or adoption.

**Rule 520. Notice to House.** The Speaker shall give the House notice before an engrossed bill or resolve may be sent to the Senate.

**Rule 521. Veto.** When a bill or resolve is returned by the Governor with objections, the question must be stated by the Chair: Shall this bill become a law notwithstanding the objections of the Governor? and the same in substance in the case of a resolve. The question may be postponed to a day within the session, not exceeding one week. No other question may apply to bills and resolves originating in either branch.

When a bill or resolve is returned by the Governor with any dollar amount disapproved pursuant to the Governor's line-item veto power, the House shall act upon the disapproved item or items within 5 days of receiving the bill or resolve from the Governor.

**Rule 522.  Rules of parliamentary practice.**  The rules of parliamentary practice comprised in Mason's Rules govern the House in all cases in which they are applicable and in which they are not inconsistent with the standing rules and orders of the House and the joint rules of the Senate and House of Representatives.  In the event that Mason's Rules do not cover the parliamentary practice in question, then Reed's Rules govern.  If neither Mason's Rules nor Reed's Rules cover the parliamentary practice in question, the rules of any other standard authority may be applied.

**Rule 523.  Dispensation of rule or order.**  A rule or order of the House may not be dispensed with unless two thirds of the members present consent to the dispensation.

**Rule 524.  Amendment, adoption or repeal of rule or order.**  A rule or order of the House may not be altered or repealed, nor may any new standing rule or order be adopted, unless one day's previous notice is given in each case.  The notice must be entered on the journal.  Notwithstanding this rule and Rule 523, after the convening of the First Regular Session, and before the fourth Friday in January in odd years, any amendment to the House Rules proposed by a House Order may be adopted by a majority vote in the House.  If the amendment has already failed to be adopted during that session, it may only be adopted if, upon reconsideration, it receives the approval of two thirds of the members present in the House.

**Rule 525.  Penobscot Nation and Passamaquoddy Tribe.**  The member of the Penobscot Nation, the member of the Houlton Band of Maliseet Indians and the member of the Passamaquoddy Tribe elected or appointed to represent their people at the biennial session of the Legislature must be granted seats on the floor of the House of Representatives; be granted, by consent of the Speaker, the privilege of speaking on pending legislation; must be appointed to sit with joint standing committees as nonvoting members during the committees' deliberations; and be granted such other rights and privileges as may from time to time be voted by the House of Representatives.  In reports from committees on which a tribal member serves, the position of the member must be noted and included.  The names of the member of the Penobscot Nation, the member of the Houlton Band of Maliseet Indians and the member of the Passamaquoddy Tribe elected or appointed to represent their people at the biennial session of the Legislature must be included on the roll call board for purposes of electronically recording their attendance only.

# Legislative Code of Ethics

Legislative service is one of democracy's worthiest pursuits. A Maine Legislator is charged with civility and responsible conduct inside and outside of the State House commensurate with the trust placed in that Legislator by the electorate.

In a free government, a Legislator is entrusted with the security, safety, health, prosperity, respect and general well-being of those the Legislator serves and with whom the Legislator serves.

To work well, government requires a bond of trust and respect between citizens and their Legislators. With such a trust, high moral and ethical standards producing the public's confidence, with the reduction to a minimum of any conflict between private interests and official duties, should be observed.

No Maine Legislators will accept any employment that will impair their independence and integrity of judgment nor will they exercise their position of trust to secure unwarranted privileges for themselves or for others. The Maine Legislator will be ever mindful of the ordinary citizen who might otherwise be unrepresented and will endeavor conscientiously to pursue the highest standards of legislative conduct inside and outside of the State House.

*Adopted by the 100th Legislature*
*Amended by the 127th Legislature*

EXHIBIT C



## STATE OF MAINE
### HOUSE OF REPRESENTATIVES
#### SPEAKER'S OFFICE
AUGUSTA, MAINE 04333-0002
(207) 287-1300

RYAN D. FECTEAU
SPEAKER OF THE HOUSE

February 18, 2025

Representative Laurel Libby
442 Park Avenue
Auburn, ME 04210

Rep. Libby,

I was recently alerted to a post on social media in which you not only depict a high school student via photos, but you share the student's name and school.

Expressing policy differences is one thing, but it is absolutely uncalled for to put students at the center of political firestorms, which in turn risks their health and safety.

I am asking you to take the post down. Please find a way to express your political opinions that is void of using students as fodder. Ask yourself, would you want a politician to post about your kids like this?

In addition to risking the young person's safety, your post violates one of the long held political traditions of "leaving kids out of it"—a tradition that has *even* been observed by political pundits with regard to the treatment of kids who are in the White House, the most scrutinized office in the nation.

I request your urgent attention to this matter.

Sincerely,

Ryan D. Fecteau
Speaker of the House

EXHIBIT D

## STATE OF MAINE

————

## IN THE YEAR OF OUR LORD

## TWO THOUSAND TWENTY-FIVE

————

## HOUSE RESOLUTION RELATING TO THE CENSURE OF REPRESENTATIVE LAUREL D. LIBBY OF AUBURN BY THE MAINE HOUSE OF REPRESENTATIVES

**WHEREAS,** on or about February 17, 2025, Representative Laurel D. Libby of Auburn posted on her Facebook page photos of a high school athlete, a minor, who won a girls' track championship this year; and

**WHEREAS,** in that same post, Representative Libby identified the student athlete by name and shared pictures showing the minor in an athletic uniform with the school name clearly legible and blurred the faces of other student athletes to protect their privacy, while intentionally and deliberately leaving the named student's face exposed; and

**WHEREAS,** accompanying the pictures, Representative Libby posted a statement criticizing the participation of transgender students in high school sports; and

**WHEREAS,** Representative Libby's post has received national attention that she has amplified by appearing on national television and radio broadcasts to discuss; and

**WHEREAS,** a recent study from the Williams Institute at UCLA found that transgender people are over four times more likely to be victims of violence; and

**WHEREAS,** numerous replies to Representative Libby's post suggested that harm should come to the young athlete; and

**WHEREAS,** Representative Libby's post named the minor and used photos of the minor without that minor's consent, in an effort to advance her political agenda; and

**WHEREAS,** when it was brought to her attention that her post may endanger the minor, Representative Libby refused to take down the post and instead continued to bring media attention to the minor; and

**WHEREAS,** it is a basic tenet of politics and good moral character that children should not be targeted by adult politicians, especially when that targeting could result in serious harm; and

**WHEREAS,** the school district, as a result of Representative Libby's actions, has had to increase security at the school causing unnecessary stress and disruption to other students, parents, teachers and school support staff and the entire community; and

**WHEREAS,** the Legislative Code of Ethics expressly states that "a Legislator is entrusted with the security, safety, health, prosperity, respect and general well-being of those the Legislator serves and with whom the Legislator serves" and that "The Maine Legislator will be ever mindful of the ordinary citizen who might otherwise be unrepresented and will endeavor conscientiously to pursue the highest standards of legislative conduct inside and outside of the State House"; and

**WHEREAS,** pursuant to Article IV, Part Third, Section 4 of the Constitution of Maine, which states that each House may "punish its members for disorderly behavior," and pursuant to Section 561, subsection 1 of Mason's Manual of Legislative Procedure, which states that "A legislative body has the right to regulate the conduct of its members and may discipline a member as it deems appropriate, including reprimand, censure or expulsion," the House is the judge of its own membership; and

**WHEREAS,** the House finds the conduct of Representative Laurel D. Libby to be reprehensible and in direct violation of our code of ethics; and

**WHEREAS,** the House finds that Representative Laurel D. Libby has conducted herself in a manner incompatible with her duty and responsibilities as a Member of this House and the public trust and high standards incumbent in that office; now, therefore, be it

**RESOLVED:** That We, the Members of the House of Representatives of the One Hundred and Thirty-second Legislature now assembled in the First Regular Session, on behalf of the people we represent, take this opportunity to declare that Representative Laurel D. Libby should be and hereby is censured by the House of Representatives for just cause; and be it further

**RESOLVED:** That Representative Laurel D. Libby must accept full responsibility for the incident and publicly apologize to the House and to the people of the State of Maine; and be it further

**RESOLVED:** That Representative Laurel D. Libby must comport herself in a manner that pursues the highest standards of legislative conduct; and be it further

**RESOLVED:** That this resolution must be entered on the Journal of the House of Representatives.

# UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

<table>
<tr><td>

LAUREL D. LIBBY, State Representative of Maine House District 90, RONALD P. LEBEL, WENDY MUNSELL, JASON LEVESQUE, BERNICE FRASER, RENE FRASER, and DONALD DUBUC,

Plaintiffs,

v.

RYAN M. FECTEAU, in his official capacity as Speaker of the Maine House of Representatives, and ROBERT B. HUNT, in his official capacity as Clerk of Maine House,

Defendants.

</td><td>

Civil Action No. 1:25-cv-00083-MRD

</td></tr>
</table>

## DECLARATION OF SUZANNE GRESSER
### (pursuant to 28 U.S.C. § 1746)

I, Suzanne Gresser, hereby declare as follows:

1.      I am over the age of 18 and reside in Freeport, Maine.

2.      I am currently serving as the Executive Director of the Maine Legislature. I have held this position since November 2020, and employed by the Maine Legislature since 1989.

3.      The Office of the Executive Director (Office) is the nonpartisan office that serves as the central administrative and management agency for the Maine Legislature. The Office provides staffing services to the Legislative Council and its committees.

4.      The Legislative Council is the administrative body for the Legislative Branch of State government. It consists of the ten elected members of legislative leadership: the President of the Senate, the Speaker of the House, the Republican and Democratic Floor Leaders for both the Senate and the House and their Assistant Floor Leaders.

1

5.      Among other responsibilities, the Office is responsible for providing administrative services to the Legislature, including legislator and employee payrolls, expense reimbursements, and budgeting and accounting functions.

6.      Committee clerks are hired by the chairs of the Joint Standing Committees, subject to the approval of the Presiding Officers, to staff the Joint Standing Committees.

7.      Maine Legislators are entitled to reimbursement for certain expenses related to their work as a Legislator in amounts set forth in statute.  3 M.R.S. § 2.

8.      Accordingly, the Office collects information recorded by committee clerks on the attendance of legislators for their legislative work meetings.  The Office enters the collected information into a database that is updated upon receipt of the attendance information from the committee clerks, which is generally on a daily basis.

9.      Attached hereto as Exhibit 1 is a true and accurate copy of a report issued by our system that shows the attendance of Representative Laurel Libby in her assigned committee, the Joint Standing Committee on Labor, as of today.  The abbreviations in the attached report mean as follows:

      a.      "CH" means confirmation hearing;

      b.      "LM" means legislative meeting;

      c.      "PH" means public hearing; and

      d.      "WS" means work session.

10.      Although Exhibit 1 indicates the report is for "On-Site" attendance, the information included in the report includes both in person attendance and remote participation.

2

I hereby declare under penalty of perjury that the foregoing is true and correct to the best of my

knowledge, information, and belief.


Dated:  April 1, 2025                              /s/ Suzanne Gresser
                                                   Suzanne Gresser

EXHIBIT 1

Legislature: 132

Committee: Labor

Begin Date Range: No lower limit

End Date Range: No upper limit

**On-Site Committee Attendance - By Committee**

Date: 4/1/2025 1:17:28 PM

Report ID: COMATT-071

Page 1 of 6

| | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| **Labor** | 01-12-2025 | 01-13-2025 | 01-14-2025 | 01-15-2025 | 01-16-2025 | 01-17-2025 | 01-18-2025 |
| Archer, Marshall | | | LM | | | | |
| Beck, Matthew | | | LM | | | | |
| Bradstreet, Richard | | | LM | | | | |
| Collins, Alicia | | | LM | | | | |
| Drinkwater, Gary | | | LM | | | | |
| Geiger, Valli | | | | | | | |
| Libby, Laurel | | | LM | | | | |
| Macias, Rafael | | | LM | | | | |
| Rafferty, Joseph | | | LM | | | | |
| Roeder, Amy | | | LM | | | | |
| Skold, Charles | | | | | | | |
| Soboleski, Michael | | | LM | | | | |
| Tipping, Michael | | | LM | | | | |
| **Labor** | 01-19-2025 | 01-20-2025 | 01-21-2025 | 01-22-2025 | 01-23-2025 | 01-24-2025 | 01-25-2025 |
| Archer, Marshall | | | LM PH | | | | |
| Beck, Matthew | | | LM PH | LM | | | |
| Bradstreet, Richard | | | LM PH | LM | | | |
| Collins, Alicia | | | LM PH | LM | | | |
| Drinkwater, Gary | | | LM PH | LM | | | |
| Geiger, Valli | | | LM PH | LM | | | |
| Libby, Laurel | | | LM PH | | | | |
| Macias, Rafael | | | LM PH | LM | | | |
| Rafferty, Joseph | | | LM PH | | | | |
| Roeder, Amy | | | LM PH | LM | | | |
| Skold, Charles | | | LM PH | | | | |

Legislature: 132

Committee: Labor

Begin Date Range: No lower limit

End Date Range: No upper limit

## On-Site Committee Attendance - By Committee

| | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| Soboleski, Michael | | | LM PH | | | | |
| Tipping, Michael | | | LM PH | LM | | | |
| **Labor** | **01-26-2025** | **01-27-2025** | **01-28-2025** | **01-29-2025** | **01-30-2025** | **01-31-2025** | **02-01-2025** |
| Archer, Marshall | | | LM | | | | |
| Beck, Matthew | | | LM | | | | |
| Bradstreet, Richard | | | | | | | |
| Collins, Alicia | | | LM | | | | |
| Drinkwater, Gary | | | LM | | | | |
| Geiger, Valli | | | LM | | | | |
| Libby, Laurel | | | LM | | | | |
| Macias, Rafael | | | LM | | | | |
| Rafferty, Joseph | | | | | | | |
| Roeder, Amy | | | LM | | | | |
| Skold, Charles | | | LM | | | | |
| Soboleski, Michael | | | LM | | | | |
| Tipping, Michael | | | LM | | | | |
| **Labor** | **02-02-2025** | **02-03-2025** | **02-04-2025** | **02-05-2025** | **02-06-2025** | **02-07-2025** | **02-08-2025** |
| Archer, Marshall | | | LM | | | | |
| Beck, Matthew | | | LM | PH | | | |
| Bradstreet, Richard | | | | | | | |
| Collins, Alicia | | | LM | PH | | | |
| Drinkwater, Gary | | | LM | PH | | | |
| Geiger, Valli | | | | PH | | | |
| Libby, Laurel | | | LM | | | | |
| Macias, Rafael | | | LM | PH | | | |

# On-Site Committee Attendance - By Committee

| | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| Rafferty, Joseph | | | LM | | | | |
| Roeder, Amy | | | LM | PH | | | |
| Skold, Charles | | | LM | PH | | | |
| Soboleski, Michael | | | LM | PH | | | |
| Tipping, Michael | | | LM | PH | | | |
| **Labor** | **02-09-2025** | **02-10-2025** | **02-11-2025** | **02-12-2025** | **02-13-2025** | **02-14-2025** | **02-15-2025** |
| Archer, Marshall | | LM | | | | | |
| Beck, Matthew | | LM | | PH | | | |
| Bradstreet, Richard | | LM | | PH | | | |
| Collins, Alicia | | LM | | PH | | | |
| Drinkwater, Gary | | LM | | PH | | | |
| Geiger, Valli | | | | PH | | | |
| Libby, Laurel | | | | | | | |
| Macias, Rafael | | LM | | PH | | | |
| Rafferty, Joseph | | | | | | | |
| Roeder, Amy | | | | PH | | | |
| Skold, Charles | | | | | | | |
| Soboleski, Michael | | LM | | PH | | | |
| Tipping, Michael | | | | PH | | | |
| **Labor** | **02-23-2025** | **02-24-2025** | **02-25-2025** | **02-26-2025** | **02-27-2025** | **02-28-2025** | **03-01-2025** |
| Archer, Marshall | | | | CH WS LM | | | |
| Beck, Matthew | | | | CH WS LM | | | |
| Bradstreet, Richard | | | | CH WS LM | | | |
| Collins, Alicia | | | | CH WS LM | | | |
| Drinkwater, Gary | | | | CH WS LM | | | |

Legislature: 132

Committee: Labor

Begin Date Range: No lower limit

End Date Range: No upper limit

**On-Site Committee Attendance - By Committee**

| | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| Geiger, Valli | | | | CH WS LM | | | |
| Libby, Laurel | | | | | | | |
| Macias, Rafael | | | | CH WS LM | | | |
| Rafferty, Joseph | | | | | | | |
| Roeder, Amy | | | | CH WS LM | | | |
| Skold, Charles | | | | | | | |
| Soboleski, Michael | | | | CH WS LM | | | |
| Tipping, Michael | | | | CH WS LM | | | |
| **Labor** | **03-02-2025** | **03-03-2025** | **03-04-2025** | **03-05-2025** | **03-06-2025** | **03-07-2025** | **03-08-2025** |
| Archer, Marshall | | | PH WS | PH LM WS | | | |
| Beck, Matthew | | | PH WS | PH LM WS | | | |
| Bradstreet, Richard | | | PH WS | PH LM WS | | | |
| Collins, Alicia | | | PH WS | PH LM WS | | | |
| Drinkwater, Gary | | | PH WS | PH LM WS | | | |
| Geiger, Valli | | | | | | | |
| Libby, Laurel | | | PH WS | | | | |
| Macias, Rafael | | | PH WS | PH LM WS | | | |
| Rafferty, Joseph | | | | | | | |
| Roeder, Amy | | | PH WS | PH LM WS | | | |
| Skold, Charles | | | | | | | |
| Soboleski, Michael | | | PH WS | PH LM WS | | | |
| Tipping, Michael | | | PH WS | PH LM WS | | | |
| **Labor** | **03-09-2025** | **03-10-2025** | **03-11-2025** | **03-12-2025** | **03-13-2025** | **03-14-2025** | **03-15-2025** |
| Archer, Marshall | | | PH | CH PH WS | | | |
| Beck, Matthew | | | PH | CH PH WS | | | |

Case: 25-5385 Document: 18 Filed: 04/01/25 Page: 525 of 6 Page ID #: 716022
Case: 25-cv-00088-MRD-06 Filed: 04/03/25 Page: 64 of 187

187

Legislature: 132
Committee: Labor
Begin Date Range: No lower limit
End Date Range: No upper limit

**On-Site Committee Attendance - By Committee**

| | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|---|
| Bradstreet, Richard | | | PH | CH PH WS | | | |
| Collins, Alicia | | | PH | CH PH WS | | | |
| Drinkwater, Gary | | | PH | CH PH WS | | | |
| Geiger, Valli | | | PH | | | | |
| Libby, Laurel | | | | | | | |
| Macias, Rafael | | | PH | CH PH WS | | | |
| Rafferty, Joseph | | | | | | | |
| Roeder, Amy | | | PH | CH PH WS | | | |
| Skold, Charles | | | | | | | |
| Soboleski, Michael | | | | | | | |
| Tipping, Michael | | | PH | CH PH WS | | | |
| **Labor** | **03-16-2025** | **03-17-2025** | **03-18-2025** | **03-19-2025** | **03-20-2025** | **03-21-2025** | **03-22-2025** |
| Archer, Marshall | | | PH WS | PH WS | | | |
| Beck, Matthew | | | PH WS | PH WS | | | |
| Bradstreet, Richard | | | PH WS | PH WS | | | |
| Collins, Alicia | | | PH WS | PH WS | | | |
| Drinkwater, Gary | | | PH WS | PH WS | | | |
| Geiger, Valli | | | PH WS | | | | |
| Libby, Laurel | | | | | | | |
| Macias, Rafael | | | PH WS | PH WS | | | |
| Rafferty, Joseph | | | | | | | |
| Roeder, Amy | | | PH WS | PH WS | | | |
| Skold, Charles | | | PH WS | PH WS | | | |
| Soboleski, Michael | | | PH WS | PH WS | | | |
| Tipping, Michael | | | PH WS | PH WS | | | |

Legislature: 132

Committee: Labor

Begin Date Range: No lower limit

End Date Range: No upper limit

## On-Site Committee Attendance - By Committee

Date: 4/1/2025 1:17:28 PM

Report ID: COMATT-071

Page 6 of 6

| | Sunday 03-23-2025 | Monday 03-24-2025 | Tuesday 03-25-2025 | Wednesday 03-26-2025 | Thursday 03-27-2025 | Friday 03-28-2025 | Saturday 03-29-2025 |
|---|---|---|---|---|---|---|---|
| **Labor** | | | | | | | |
| Archer, Marshall | | | PH WS | PH WS | | | |
| Beck, Matthew | | | PH WS | PH WS | | | |
| Bradstreet, Richard | | | PH WS | PH WS | | | |
| Collins, Alicia | | | PH WS | PH WS | | | |
| Drinkwater, Gary | | | PH WS | PH WS | | | |
| Geiger, Valli | | | PH WS | PH WS | | | |
| Libby, Laurel | | | | | | | |
| Macias, Rafael | | | PH WS | PH WS | | | |
| Rafferty, Joseph | | | PH WS | | | | |
| Roeder, Amy | | | PH WS | PH WS | | | |
| Skold, Charles | | | PH WS | PH WS | | | |
| Soboleski, Michael | | | PH WS | PH WS | | | |
| Tipping, Michael | | | PH WS | PH WS | | | |