No. 25-1385

# UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

LAUREL D. LIBBY, RONALD P. LEBEL, WENDY MUNSELL, JASON LEVESQUE, BERNICE FRASER, RENE FRASER, and DONALD DUBUC,
*Plaintiffs-Appellants*,

v.

RYAN M. FECTEAU, in their official capacity as Speaker of the Maine House of Representatives, and ROBERT B. HUNT, in their official capacity as Clerk of the House,
*Defendants-Appellees*,

On Appeal from the United States District Court
for the District of Maine
No. 1:25-cv-83-MRD

## REPLY IN SUPPORT OF <u>EMERGENCY</u> MOTION FOR INJUNCTION PENDING APPEAL

Taylor A.R. Meehan
Daniel M. Vitagliano*
Marie E. Sayer*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
taylor@consovoymccarthy.com
dvitagliano@consovoymccarthy.com
mari@consovoymccarthy.com

Patrick N. Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423
patrick@consovoymccarthy.com

*\*Supervised by principals of the firm
   admitted to practice in VA*

*Counsel for Appellants*

## TABLE OF CONTENTS

Introduction ...........................................................................................................1

Argument ...............................................................................................................2

    I.    Legislative immunity is inapplicable. ..................................................2

    II.    Movants will likely succeed on the merits. ..........................................6

    III.    The remaining injunction factors favor relief. .................................. 10

Conclusion ........................................................................................................... 11

Certificate of Compliance .................................................................................... 12

Certificate of Service ........................................................................................... 13

# INTRODUCTION

Defendants insist there's nothing extraordinary about their refusal to count Representative Libby's votes. Resp.8-11. They say it's only "a limited and conditional punishment" to deny equal representation to Libby's constituents for the rest of her elected term. Resp.18.

Defendants' expansive claim of legislative immunity has no limiting principle. If the House has the last word on whose votes count and whose don't, then the act of "tallying votes" for only Christian legislators or Republican legislators or middle-aged legislators is beyond this Court's review too. Resp.6.

Defendants also leave the truth behind. Libby disclosed no new "personal" or "medical information." *Contra* Resp.1. She didn't "municiz[e]" anything private. *Contra* Resp.17. She republished competitors' names, results, and podium pictures from a statewide sporting event. Compl. ¶¶32-33. Wisely, Defendants never contested Libby's speech was true, lawful, or constitutionally protected. And yet, they insist she recant her views as a "condition" of restoring District 90's equal representation. Resp.11.

Never has the Maine House applied its rule to keep a member from voting. *Contra* Resp.10. No other State nor the U.S. House purports to wield such power to police speech. The extraordinary circumstances here justify relief restoring the status quo.

## ARGUMENT

**I.    Legislative immunity is inapplicable.**

Legislative immunity does not preclude this challenge to restore District 90's equal representation. Defendants cannot evade judicial review of the Clerk's refusal to count Libby's vote simply because a censure resolution and House rule precipitated it, *contra* Resp.5, any more than they could evade judicial review if a resolution directed the Clerk to count only male legislators' votes. *See Gravel v. United States*, 408 U.S. 606, 618-21 (1972); *Powell v. McCormack*, 395 U.S. 486, 504 (1969); *Kilbourn v. Thompson*, 103 U.S. 168, 205 (1880).

Defendants say any act of "tallying votes" is off limits, seemingly because the Maine Constitution identifies the Clerk.[1] Resp.6. Such arguments didn't work in *Powell* and don't work here. No different than Maine, the U.S. Constitution requires the House to elect its clerk and "keep a Journal." U.S. Const. art.I §2, cl.5 & §5, cl.3; *see Jefferson's Manual and Rules of the House of Representatives* §§26, 640 (2023), https://perma.cc/U78W-KZ2G. Still, the U.S. House clerk's refusal to count votes was reviewable in *Powell*, 395 U.S. at 494.

---

[1] Defendants' suggestion that the complaint doesn't say enough about the Clerk is fanciful. Resp.5 n.3. Defendants fully understood Movants sought relief against the Clerk below, arguing immunity covered even "act[s] … performed by the House Clerk." PI-Opp.7 (Dkt.28). Nor did Defendants question the adequacy of allegations about the Clerk in their motion to dismiss (Dkt.31).

Defendants are half-right that what matters is "not the identity of the actor." Resp.7. What matters is that the refusal to count votes by a duly elected legislator could never be called "an integral part of the deliberative and communicative processes." *Gravel*, 408 U.S. at 625. Marking Libby as a "Z" on roll call votes for the rest of her term is no legislative act. Mot.4-5; *see In re Grand Jury Proc.*, 563 F.2d 577, 585 (3d Cir. 1977) (privilege inapplicable to "clerical work" that "must be performed regardless of" legislator's "position"). Legislators, let alone the Clerk, do not decide just how much their colleagues' votes should count. Resorting to immunity for such antidemocratic acts inflicts irreparable harm on those whom legislative immunity is meant to protect— "the people," including constituents in District 90, not the Speaker or Clerk for their own convenience. *Tenney v. Brandhove*, 341 U.S. 367, 373-374, 377 (1951) (legislative immunity operates "for the public good").

No different than *Powell* or *Kilbourn*, Plaintiffs can challenge the Clerk's acts, even if directed by "resolution." *Gravel*, 408 U.S. at 618; *see also Walker v. Jones*, 733 F.2d 923, 932 (D.C. Cir. 1984) (R.B. Ginsburg, J.) (explaining "execution of a decision," even if decided by a committee vote "is not cloaked with … immunity"). It matters not that "the relief sought relates to actions taken by House agents." *Powell*, 395 U.S. at 504. Immunity does not shield "all conduct *relating* to the legislative process." *United States v. Brewster*, 408 U.S. 501, 515 (1972). And yet that rule of legislative "supremacy" is what Defendants advance, *id.* at 508, destroying equal representation in the Maine House along the way.

3

Defendants offer no basis for distinguishing *Powell*'s rejection of the Clerk's immunity defense. Defendants instead resort to arguments that *Gravel* implicitly "overruled" *Powell* and that this Court "confine[s]" *Powell* "to its unique facts." Resp.7-8. These arguments are an invitation to err. *Gravel* exhaustively discussed *Kilbourn*'s and *Powell*'s limits on legislative immunity as *consistent* with its holding. 408 U.S. at 618-21. *Gravel* repeated that immunity does *not* apply to acts "execut[ing] an invalid resolution"—the clerk in *Powell* who "carr[ied] out directions" and the sergeant-at-arms in *Kilbourn* who "execut[ed] a legislative order." *Id.* at 620-21. Similarly, this Court in *Harwood* said only that *Powell* should not be misread to reject legislative immunity for *all* "legislative employees" because immunity turns "on whether 'relief could be afforded without proof of a legislative act or the motives or purposes underlying such an act,'" regardless of the actor. *Nat'l Ass'n of Soc. Workers v. Harwood*, 69 F.3d 622, 633 (1st Cir. 1995). *Powell*'s application of that rule continues to bind this Court and others. *See Eslinger v. Thomas*, 476 F.2d 225, 230 (4th Cir. 1973) (holding clerk was "not immune" because, citing *Powell*, "[l]egislative employees who participate in unconstitutional activity are responsible for their acts"); *Bastien v. Off. of Senator Ben Nighthorse Campbell*, 390 F.3d 1301, 1315-16 (10th Cir. 2004) (discussing *Powell* and observing plaintiffs can still pursue claims of "discriminatory action" even if "directed" by "committee resolution"); *Baker v. Fletcher*, 204 S.W.3d 589, 596 (Ky. 2006) (discussing *Powell* and faulting plaintiffs for not naming the clerk); *Sweeney v. Tucker*, 375 A.2d 698, 704 (Pa. 1977) (allowing "action against the House Comptroller" per *Powell*).

4

Defendants also invite this Court to err by equating their extraordinary refusal to count District 90's votes with generally applicable voting rules for all members in *Cushing v. Packard*, 30 F.4th 27 (1st Cir. 2022) (en banc), and *McCarthy v. Pelosi*, 5 F.4th 34 (D.C. Cir. 2021), or the generally applicable mask rule in *Massie v. Pelosi*, 72 F.4th 319 (D.C. Cir. 2023). Resp.4-5, 8-9. Defendants contend this case is no different—a mere challenge to "the application of a procedural rule" that risks "intruding into internal state legislative affairs" and embroiling the Court in "warring sides in partisan state legislators' battles." Resp.9, 11 (quoting *Cushing*, 30 F.4th at 52).

To the contrary, invoking immunity to shield the refusal to count District 90's votes is the very "abuse" this Court warned against in *Cushing*. 30 F.4th at 52 (citing *Kilbourn* 103 U.S. at 204); *accord id.* at 62-65 (Thompson, J., dissenting). Just as legislative defendants could not claim immunity had they "target[ed]" particular legislators with different voting privileges in *Cushing*, 30 F.4th at 51, Defendants cannot claim immunity for their refusal to count a legislator's vote for the remainder of her elected term. Indefinitely excluding a legislator from the legislative process "serves" no "democratic end." *Id.* at 52. It is entirely antidemocratic. If anything counts as an act of "extraordinary character" for which immunity does not apply, it is that. *Kilbourn*, 103 U.S. at 204.

A half-century ago, the Supreme Court rejected the immunity arguments Defendants advance here. Under *Powell*, the Clerk cannot refuse to count the votes of District 90's representative and then claim immunity. *Powell*, 395 U.S. at 504-06. And unsurprisingly in *Bond v. Floyd*, Georgia conceded it could not be "completely free of

5

judicial review" for disqualifying an elected representative. 385 U.S. 116, 130 (1966). Of course federal courts "would be justified" in examining a legislator's exclusion. *Id.*; *accord Kilbourn*, 103 U.S. at 205. Still today, "refusing to seat a member has never been determined to be protected by any type of immunity." *Star Distribs. v. Marino*, 613 F.2d 4, 9 (2d Cir. 1980). Neither *Powell* nor *Bond* suggest a legislative body need only let a legislator sit and then refuse to let her vote. To hold otherwise would "permit legislative immunity, designed to safeguard representative democracy, to be weaponized against the representation it is meant to support." *Cushing*, 30 F.4th at 59 (Thompson, J., dissenting).

## II.   Movants will likely succeed on the merits.

A. *First Amendment.* Defendants misunderstand retaliation claims. The retaliation question is not whether there's "a First Amendment right to vote on any particular piece of legislation." *Contra* Resp.12. Libby isn't claiming that right. She's claiming she "engaged in constitutionally protected conduct" by speaking out on Facebook and, in response, was "subjected to an adverse action." *Gattineri v. Town of Lynnfield*, 58 F.4th 512, 514 (1st Cir. 2023). Defendants still do not contest that Libby's post is constitutionally protected speech, that they refuse to count District 90's votes because of that speech, or that their refusal to count votes is adverse action. Mot.12-15.

Defendants also misappropriate precedent. The Supreme Court did not silently overrule *Bond* in *Wilson*, which involved a "purely verbal censure" that "did *not* prevent [the legislator] from doing his job" or otherwise "deny him any privilege of office." *Hous. Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477, 479 (2022) (emphasis added). The

refusal to count votes does, going well beyond "a form of speech." *Contra* Resp.11-12. It necessarily "implicate[s] the franchise of [Libby's] constituents." *Wilson*, 595 U.S. at 481-82 (emphasizing challenged censure did "not involve expulsion, exclusion, or any other form of punishment"). That *Wilson* did not address immunity has no bearing on the *merits* of Libby's retaliation claim. *Contra* Resp.15. But that this Court in *Miller v. Town of Hull* denied qualified immunity under *Bond* confirms that claim is likely to succeed. 878 F.2d 523, 533-34 (1st Cir. 1989).

As for history, Defendants do not address the dearth of precedent for denying a legislator her vote. They repeat the same four examples across the country's 250-year history that Movants preemptively addressed. Resp.13-14. Three of the four involved criminal activity, three were disputed as unconstitutional at the time, and one never decided the issue of suspending members' vote. Mot.13-15 & n.3. Maine's rule is an outlier, and the House has never applied it to disenfranchise a district until now. Mot.14-15; *e.g.*, Wis. Leg. Ref. Bur., *Discipline in the Wisconsin Legislature* 4 (2020), https://perma.cc/FK4F-JF6L. As for *Boquist v. Courtney*, 32 F.4th 764 (9th Cir. 2022), Defendants say the Ninth Circuit "wrongly concluded" that the prevailing view is that a legislator could not be deprived of her vote. Resp.15. So for Defendants to prevail, this Court must split with the Ninth Circuit, reject the U.S. House's longstanding view, and ignore *Bond*.

**B. *Fourteenth Amendment*.** Defendants maintain that Plaintiffs are "not disenfranchised" and there is no unconstitutional "vote dilution." Resp.18-19. After all,

7

Libby can still go to the labor committee hearings and provide "constituent services." Resp.17. Defendants do not once cite *Reynolds v. Sims*, 377 U.S. 533 (1964), or reconcile the Constitution's promise of equal representation with the draconian punishment of ignoring District 90's votes until 2026 or later.

Defendants invite the Court to balance away those harms. Resp.16-18. But *Anderson-Burdick* balancing is for ballot-access restrictions, not the exclusion of a legislative district from voting. *See Anderson v. Celebrezze*, 460 U.S. 780 (1983) (filing deadlines for independent candidates); *Burdick v. Takushi*, 504 U.S. 428 (1992) (prohibition on write-in candidates). No court would invoke *Anderson-Burdick* had District 90 been unconstitutionally malapportioned, denying its constituents an equal vote in the House. *See, e.g.*, *Reynolds*, 377 U.S. at 568 (asking only whether seats were equally apportioned, not whether malapportionment was burdensome). Here too, Defendants cannot balance away their refusal to give District 90 equal representation for the rest of its chosen legislator's elected term. *E.g.*, *Michel v. Anderson*, 14 F.3d 623, 626 (D.C. Cir. 1994) ("It could not be argued seriously that voters would not have an injury if their congressman was not permitted to vote at all on the House floor.").

Even if *Anderson-Burdick* applied, eliminating District 90's vote is a most severe burden triggering strict scrutiny. *Ayers-Schaffner v. DiStefano*, 37 F.3d 726, 729-30 & n.9 (1st Cir. 1994); *see Dunn v. Blumstein*, 405 U.S. 330, 334-37 (1972); *Peeper v. Callaway Cnty. Ambulance Dist.*, 122 F.3d 619, 623 & n.5 (8th Cir. 1997). Defendants cite nothing for their astonishing claims that they've imposed only a "modest" burden that is

8

"reasonable and non-discriminatory" because Libby retains other "privileges." Resp.17. Libby's *floor vote* is how she "execut[es] the legislative process," *Nev. Comm'n on Ethics v. Carrigan*, 564 U.S. 117, 125 (2011), and "consummate[s] [her] duty to [her] constituents," *Miller*, 878 F.2d at 533; *see* Libby-Decl. ¶7. Incidental privileges are no substitute for that exercise of legislative power—any more than a judge's hiring staff substitutes for deciding cases.

Defendants' purported interest in the House's "reputation" cannot justify their refusal to count Libby's votes. Citing nothing, Defendants claim "Libby inflicted considerable damage on the House's reputation and integrity."[2] Resp.16. Even if it were enough for a legislative majority to simply declare reputational damage, there are more narrowly tailored responses, including verbal censures. *See, e.g.*, *Buckley v. ACLF*, 525 U.S. 182, 196 (1999) (state's justification for restricting ballot initiatives was served by other means). Defendants instead chose the most untailored path, entering the third month of refusing to count Libby's votes.

---

[2] Defendants falsely claim Libby "disclosed … medical information." Resp.1, 16-17. Libby never said anything about medical treatment to transition the athlete's physiology. Compl. ¶31. Nor would it have been implied. Maine's policy says that a transgender athlete need only "declare their gender identity" and that "[n]o medical records or official documents shall be requested or required to establish a student's gender identity." Me. Principal's Ass'n, *2024-2025 Handbook* art.II, §12(2), https://perma.cc/923N-PW6Z. The Attorney General knows this—Maine's policies are centerstage in other litigation—but couldn't resist mischaracterizing. The Court can draw its own conclusions as to why.

9

*Monserrate* is inapposite. Resp.16-18. Monserrate was *expelled* after his domestic violence indictment, and a special election followed. *Monserrate v. N.Y. Senate*, 599 F.3d 148, 152-53 (2d Cir. 2010). Here, a bare majority lacking the votes to expel simply eliminated District 90's vote. There will be no special election to "reduce" any temporary "burden imposed on voting rights." *Id.* at 155; *see* Mot.9 n.2. District 90 is without a vote indefinitely.

Nor does insisting on an apology right Defendants' constitutional wrong. Resp.11, 17. It compounds it. *See* Mot.19 n.4. What Defendants trivialize as an "ordinary" "condition"—"Just recant your views to vote!"—is an unconstitutional condition and unlawfully compels speech. *Bourgeois v. Peters*, 387 F.3d 1303, 1325 (11th Cir. 2004); *303 Creative v. Elenis*, 600 U.S. 570, 588-89 (2023).

## III.  The remaining injunction factors favor relief.

Defendants do not dispute Movants' harm is irreparable. Resp.19-20. They contend only that the equities favor District 90's disenfranchisement because "the House must be able to punish" a "contumacious[]" member. *Id.* Even if such an interest could exist, it's been served: District 90's votes have not counted since February. Defendants offer no legal, historical, or equitable basis for denying Libby's constituents their equal representation for the rest of Libby's term.

It is hard to conceive of an injunction pending appeal more warranted "to preserve the status quo." *Coalition for Basic Human Needs v. King*, 654 F.2d 838, 843 (1st Cir. 1981). For 250 years, American legislators have voted "as trustee[s] for [their]

10

constituents." *Carrigan*, 564 U.S. at 126. An injunction that Libby's vote "be counted equally," consistent with legislators' votes across the country, preserves the most "fundamental principle of representative government." *Reynolds*, 377 U.S. at 560-61.

## CONCLUSION

This Court should grant an injunction pending appeal.

Dated: April 24, 2025

Taylor A.R. Meehan
Daniel M. Vitagliano*
Marie E. Sayer*
CONSOVOY MCCARTHY PLLC
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423
taylor@consovoymccarthy.com
dvitagliano@consovoymccarthy.com
mari@consovoymccarthy.com

*Supervised by principals of the firm admitted to practice in VA*

Respectfully submitted,

/s/ *Patrick N. Strawbridge*
Patrick N. Strawbridge
CONSOVOY MCCARTHY PLLC
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109
(703) 243-9423
patrick@consovoymccarthy.com

*Counsel for Appellants*

## CERTIFICATE OF COMPLIANCE

This reply complies with Federal Rule of Appellate Procedure 27(d)(2)(C) because it contains 2,600 words, excluding the parts that can be excluded. This reply also complies with Rule 32(a)(5)-(6) because it has been prepared in a proportionally spaced face using Microsoft Word in 14-point Garamond font.

Dated: April 24, 2025 /s/ *Patrick N. Strawbridge*

## CERTIFICATE OF SERVICE

I filed this reply via the Court's ECF system, which will electronically notify the following:

>Jonathan R. Bolton
>Kimberyl L. Patwardhan
>Office of the Maine Attorney General
>6 State House Station
>Augusta, ME 04333
>207-626-8551
>jonathan.bolton@maine.gov
>kimberly.patwardhan@maine.gov

Dated: April 24, 2025　　　　　　　　　　　　/s/ *Patrick N. Strawbridge*